GARY F. DUNN *vs.* BOARD OF ASSESSORS OF STERLING.

Worcester.   February 10, 1972. — April 27, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, & BRAUCHER, JJ.

*Public Record.   Taxation,* Assessors of taxes.   *Municipal Corporations,* Public records.

Field record cards prepared by a private consulting firm engaged by a town to furnish it with appraisal information for use by the board of assessors in appraising taxable real estate in the town were not public records as defined either in G. L. c. 4, § 7, Twenty-sixth, or in G. L. c. 66, § 17B, and the petitioner, a property owner, was not entitled to inspect them.   [693–695]

PETITION for a writ of mandamus filed in the Superior Court on March 4, 1971.

The case was heard by *Beaudreau, J.*

*Thomas J. Donahue, Jr.,* for the respondents.

TAURO, C.J.   The petitioner seeks a writ of mandamus ordering the board of assessors of the town of Sterling to make available for the petitioner's examination field record cards which a private consulting firm prepared at the direction of the respondent for its use in making assessments.   A judge of the Superior Court ruled that the field record cards are public records within the meaning of G. L. c. 4, § 7, Twenty-sixth, as amended through St. 1969, c. 831, § 2, and that the petitioner has the right under G. L. c. 66, § 10, as appearing in St. 1948, c. 550, § 5, to inspect and examine them.[1]   The respondent has appealed

---

[1] The "public records" definition (G. L. c. 4, § 7, Twenty-sixth) is reproduced in *Town Crier, Inc.* v. *Chief of Police of Weston, ante,* 682, 684–685, fn. 3.   For G. L. c. 66, § 10, see *id.* at 683, fn. 1.

from the judge's order directing that a writ of mandamus issue.

The following facts appear from the evidence which is reported in full.[2]  Under a contract with the town dated April 3, 1969, private consultants inspected all properties in Sterling as part of a reappraisal and revaluation study in which the board of assessors was to act as "Appraisers-in-Chief" and to make all final assessments.  Pursuant to this contract, the respondent was furnished field record cards for each property inspected.  These cards contain, inter alia, data pertaining to the land and neighborhood, data pertaining to the construction, age, and condition of buildings on the land, and valuation computations and totals for both land and buildings.  On February 23, 1971, at a meeting of the board, the petitioner requested permission to examine all field record cards in the board's possession.[3]  The respondent has refused to comply with the petitioner's demand.

As in *Town Crier, Inc.* v. *Chief of Police of Weston, ante,* 682, the sole issue before us is whether certain records of a town are public records under the laws of the Commonwealth.  In the *Town Crier* case, we held that, under our statutory definition of public records, a record kept by a public officer or employee is a public record only if the entries contained therein were made pursuant to a requirement of law.  G. L. c. 4, § 7, Twenty-sixth.  We are of opinion that this holding is dispositive in the circumstances of the instant case.

Assessors are not mere public employees but are public officers whose powers and duties are defined by statute. See *Cox* v. *Segee,* 206 Mass. 380, 382; *Williams* v. *City Manager of Haverhill,* 330 Mass. 14, 15.  There is no statutory mandate which requires that the board of asses-

---

[2] The respondent's request for a report of material facts was denied by the judge on the basis that "there was no disputed evidence."  See *Bearce* v. *Zoning Bd. of Appeals of Brockton,* 351 Mass. 316, 317.

[3] The petitioner's request was not limited to the card affecting his own property.  This card was apparently furnished because it is the petitioner's exhibit 2 in the record.

sors keep field record cards such as those involved in the instant case. Compare G. L. c. 59, §§ 43–46 and 49–52, requiring the making of valuation and assessment lists, and c. 59, § 60, requiring the recording of all abatements of taxes.[4] It is not enough that the field record cards are the property of the town and were obtained in the regular course of the board's business. As we have construed G. L. c. 4, § 7, Twenty-sixth, the field record cards are not public records in the absence of a requirement of law that the board keep such cards. Further, while it may be that the board uses the information collected on these cards in making the valuation and assessment lists required under G. L. c. 59, §§ 43–46 and 49–52, we have held that a record containing information which later becomes part of a public record is not a public record merely by virtue of such relation but must itself satisfy the statutory definition in all respects. *Town Crier, Inc.* v. *Chief of Police of Weston, ante,* at 689–690. Cf. *Mariano* v. *Building Inspector of Marlborough,* 353 Mass. 663, 665–666. Accord, *Steiner* v. *McMillan,* 59 Mont. 30, 36; *Matter of Andrews* v. *Police Dept. of the City of New York,* 50 Misc. 2d (N. Y.) 343; *Steel* v. *Johnson,* 9 Wash. 2d 347, 355–356.

Apart from records containing entries "made or . . . required to be made by law," the statutory definition also encompasses records which a public officer or employee "has received or is required to receive for filing" and the official correspondence of public officers and employees. G. L. c. 4, § 7, Twenty-sixth. See *Lord* v. *Registrar of Motor Vehicles,* 347 Mass. 608, 611. The field record cards in this case, however, plainly do not come within either category. Nor are they one of the classes of records which, although not covered by the statutory definition, have been made public records by G. L. c. 66, § 17B,

---

[4] However, while certain records of the assessors are public records by statute, others are not. G. L. c. 59, §§ 29–32 (personal property tax lists), c. 59, § 59 (applications for abatement). With respect to commitment sheets, tax ledgers, and daily cash books in the custody of the collector of taxes, see *Hardman* v. *Collector of Taxes of No. Adams,* 317 Mass. 439.

as amended through St. 1970, c. 778. See *Town Crier, Inc.* v. *Chief of Police of Weston, ante,* at 688–689.

The question whether such field record cards are public records has arisen in New Jersey under a statutory definition of public records nearly identical to our own. See N. J. Sts. Ann. § 47:3–1. We agree with the Supreme Court of New Jersey which said: "[The statutory language contains] . . . no mandate embracing the information . . . in the controversial documents . . . . The cards were the result of a contract between the township and a third party as an extracurricular endeavor to facilitate the new tax program contemplated by the public body. Admittedly they were paid for by the taxpayers' money but the mere paying by the township does not of itself constitute them public records. All information and documents kept by the municipality are not public records, yet presumably all are paid for directly or indirectly with public funds. We cannot, under the circumstances, classify the cards . . . as a public record." *Tagliabue* v. *North Bergin,* 9 N. J. 32, 35–36.[5]

For these reasons, we conclude that the field record cards in the instant case do not constitute public records and there exists no right of public access under G. L. c. 66, § 10.[6]

---

[5] A similar result was reached in *Kottschade* v. *Lundberg,* 280 Minn. 501, although the statute involved was broader than either our G. L. c. 4, § 7, Twenty-sixth, or N. J. Sts. Ann. § 47:3–1. There, the statute applied to "all records necessary to a full and accurate knowledge of . . . official activities." Minn. Sts. § 15.17(1). The Supreme Court of Minnesota said: "Read literally . . . [the statutory language] seems to place no bounds on the information which must be made a public record. . . . [I]t appears to us that the legislature did not intend anything that sweeping. . . . [We conclude] all that need be kept of record is information pertaining to an official decision, and not information relating to the process by which such a decision was reached." *Kottschade* v. *Lundberg, supra,* at 504–505. Cf. *Linder* v. *Eckard,* 261 Iowa, 216 (involving appraisals by urban renewal agency made to aid city council).

[6] As was noted in *Town Crier, Inc.* v. *Chief of Police of Weston, ante,* at 691, however, even if certain records kept by public officers and employees are not public records, they are nonetheless "subject to being summoned before a proper tribunal in accordance with established rules of law." Furthermore, merely because a particular record of this type is not subject to G. L. c. 66, § 10, there is nothing

The order for issuance of the writ of mandamus is reversed. Judgment dismissing the petition is to be entered.

*So ordered.*

we are aware of which prohibits a "town or its officials from . . . voluntary and nondiscriminatory disclosure . . . subject to the rights and privileges of persons named therein." *Id.* at 691–692.