ANDREW GOLD ET AL. *v.* JOHN McDERMOTT

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 18

Argued May 13—decided June 26, 1975

*Richard M. Cosgrove,* for the appellant (defendant).

*William R. Breetz, Jr.,* for the appellees (plaintiffs).

ANTHONY J. ARMENTANO, J.  This action was submitted to the trial court on a stipulation of facts.  By agreement of counsel, Alexander Standish, acting city assessor, became the sole defendant.  At the time of hearing, a motion to substitute John McDermott, city assessor, for Alexander Standish was granted.  All plaintiffs are Hartford taxpayers and residents of the state of Connecticut.  They reside in single-family homes owned by them and by their spouses in the city of Hartford.  The present assessed value of the property owned by the plaintiffs and of all taxable property on the current grand list of Hartford, other than property altered or constructed between 1961 and the present time, was established in a 1961 revaluation of all taxable property in Hartford.  The current grand list of Hartford, as well as grand lists of prior years, is available for inspection by the general public.  The property record cards (or "field cards") are available to property owners for inspection on request.  These cards contain valuations which serve as a basis for assessment found in the current grand list.

During 1971 the city of Hartford decided to make a complete revaluation of all taxable property in the city.  Subsequently, it entered into a contract with Appraisal Surveys, Inc., hereinafter referred to as Appraisal Surveys, whereby the firm agreed to perform a complete revaluation of all taxable property in Hartford for local real estate taxation purposes.  Pursuant to the contract, Appraisal Surveys has been paid the sum of $297,401.70 by Hartford.  The firm is no longer performing work under the contract.  Certain documents, records, computer tapes and printouts, and other material were prepared by either Appraisal Surveys or employees of Hartford, or both of them, under the contract between the firm and the city.  The documents include property record cards with

raw valuation data collected by Appraisal Surveys, computer printouts and tapes with the assessment valuation of properties provided by Appraisal Surveys, and manuals and printouts with standards and formulae developed by Appraisal Surveys and Hartford to convert the valuation data on the property record cards into assessment valuations.

Between November 10, 1972, and December 20, 1972, Appraisal Surveys and employees of the city of Hartford sent notices of assessment to the owners of 75 to 85 percent of all taxable properties in the city. The assessed value shown on each notice of assessment was based on the valuation data principally supplied by Appraisal Surveys and was reviewed and revised in part by employees of Hartford. Subsequent to the mailing of the notices of assessment, a computer printout which contained information based on the revaluation data was available for public inspection at the assessor's office. The underlying property record cards were also made available for public inspection by individual property owners on request.

The assessment valuations and valuation data produced pursuant to the contract between Hartford and Appraisal Surveys have never been accepted by the city for use in establishing the grand lists. Since October 1, 1973, the materials produced under the contract have not been available for public inspection. On January 29, 1974, the plaintiffs, pursuant to General Statutes § 1-19,[1] filed with the defendant a written request for inspection and copying of records and documents produced under the contract between Hartford and Appraisal Surveys. That request was denied on January 31, 1974. The plaintiffs thereafter

---

[1] General Statutes § 1-19 was amended by Public Acts 1975, No. 75-342, § 2, effective October 1, 1975.

appealed to the Circuit Court seeking an order of disclosure as authorized by General Statutes § 1-20.[2] The court ordered the defendant to make available for inspection and copying all records and documents requested by the plaintiffs, and the defendant has appealed that order.

Before addressing ourselves to the defendant's assignment of errors, an explanation of the legislative history and purposes of General Statutes §§ 1-19 and 1-20, Connecticut's "right to know" law, is pertinent. When construing statutes to ascertain legislative intent, courts must look to the legislative history as well as the purpose which the statutes are to serve and the circumstances surrounding their enactment. *Rizzo* v. *Price,* 162 Conn. 504, 507. Sections 1-19 and 1-20 became effective on January 1, 1958. Prior to that date Connecticut recognized the common-law doctrine of public inspection. Under that doctrine every person, either individually or through his agent, had a right to inspect public records if he could demonstrate an interest sufficient to justify the inspection. At common law the interest requirement was strictly interpreted to mean such interests "as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information." 66 Am. Jur. 2d, Records and Recording Law, § 15. The strict interest requirement is generally not enforced in the United States. An interest as a citizen and a taxpayer is regarded as sufficient to give rise to the right of inspection, particularly to allow a citizen to ascertain whether public money is being properly expended. *McCoy* v. *Providence Journal Co.,* 190 F.2d 760, 764.

---

[2] General Statutes § 1-20 was repealed by Public Acts 1975, No. 75-342, § 17, effective October 1, 1975.

Connecticut's right to know law was enacted to expand the common-law right. Under our law, if a document is made, maintained, or kept on file by a governmental body and if it does not fall within certain exceptions, then it must be made available for public inspection, and no showing of interest or special purpose is required. The purpose of the law was ably summarized by Representative Robert B. August, the sponsor of the bills in the House, during the proceedings immediately prior to passage of one of the bills: "[R]ecords of governmental bodies should in general be public unless there was some specific exclusion or unless there were a question of the impairment of the reputation or character of an individual or financial loss to the State." 7 H.R. Proc., Pt. 5, 1957 Sess., p. 2651. Senator John H. Filer, the sponsor of the bills in the Senate, clearly indicated in his testimony that the right to know law was designed "to establish the principle that the government serves best when the people know what appears in its records and that all of its actions are open to the public." 7 S. Proc., Pt. 4, 1957 Sess., p. 2492. In light of the intent of the law to provide for disclosure and accountability, §§ 1-19 and 1-20 of the General Statutes, allowing inspection, have been broadly construed. *Meriden Record Co.* v. *Browning*, 6 Conn. Cir. Ct. 633, 637; *State* v. *Mayo*, 4 Conn. Cir. Ct. 511, 515.

The defendant's first assignment of error is that the court erred in concluding that all of the documents and records to which the plaintiffs seek access constitute public records within the meaning of General Statutes § 1-19. The relevant portion of § 1-19 provides that "all records made, maintained or kept on file by any executive, administrative, legislative or judicial body, agency, commission or official of the state, or any political sub-

division thereof, whether or not such records are required by any law or by any rule or regulation, shall be public records." That definition is extremely broad. The issue for our determination is whether the documents and materials that the plaintiffs seek, which contain raw valuation data and assessment data compiled by the city of Hartford and a private firm under a contract for revaluation of taxable properties in the city for purposes of real estate taxation, fall within the definition above. That is a matter of first impression for this court. A similar question, however, was recently considered by the Supreme Court of New Hampshire under a right to know statute parallel to our own in that it contains no specific definition of "public record." *Menge* v. *Manchester,* 113 N.H. 533. In *Menge* the court concluded that field record cards used to determine real estate assessments were public records and should be open to inspection under the New Hampshire right to know law. We find that conclusion persuasive.

The defendant also contends that the documents and other material which the plaintiffs seek to inspect cannot constitute public records because they do not serve as a memorial of any official transaction and because the revaluation is not yet complete. There is nothing in the language of § 1-19 of the General Statutes indicating that a document must be connected with an official or completed transaction to be a public record.

Looking to the purposes of the Connecticut right to know law, we must conclude that data which serves these purposes were intended by the legislature to constitute a public record and should be open to public inspection. See *Bartels* v. *Roussel,* 303 So. 2d 833 (La. App.); *MacEwan* v. *Holm,* 226 Ore. 27. Although not pertinent to this case, we should note that our legislature has recently passed

a new right to know law, which is broader than §§ 1-19 and 1-20. See Public Acts 1975, No. 75-342.[3] The new act supports a policy of broad disclosure and liberal definition of the meaning of public records. Statutes conferring the right to inspect public records have been liberally construed in favor of inspection. See *State ex rel. Hansen* v. *Schall,* 126 Conn. 536, 542.

Concluding that a document is a public record within the meaning of § 1-19 of the General Statutes does not give rise to an automatic right of inspection. If the document falls within one of the exceptions or exclusions found in §§ 1-19 and 1-20, then inspection will be precluded. A document could belong to one of three categories: (1) its inspection can be expressly precluded by any federal or state statute or regulation; (2) its inspection can be specifically excluded by § 1-19 of the General Statutes; or (3) its inspection can be precluded if such inspection adversely affects public security or the financial interests of the state.

In his second assignment of error, the defendant focuses on the first category of exceptions. He contends that the trial court erred in concluding that the provisions of General Statutes § 12-55 are not inconsistent with the provisions of General

---

[3] The new act defines public records as follows: " 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method." Public Acts 1975, No. 75-342, § 1 (d). Disclosure of preliminary drafts or notes is sanctioned, unless the public agency establishes that "the public interest in withholding such documents clearly outweighs the public interest in disclosure." Public Acts 1975, No. 75-342, § 2 (b). The act further provides: "Any public agency which maintains its records in a computer storage system shall provide a printout of any data properly identified." Public Acts 1975, No. 75-342, § 4 (see General Statutes §§ 1-18a [d], 1-19a).

Statutes §§ 1-19 and 1-20 and do not preclude access to the records of the assessor of the city of Hartford pursuant to the latter sections.

Section 12-55 provides in part: "When the lists of any town have been . . . made by the assessors . . . [and] when such lists have been so completed, the assessors shall arrange such lists in alphabetical order and lodge the same . . . in the town clerk's or assessors' office . . . for public inspection." The defendant contends that § 12-55 regulates inspection of assessment records, limits such inspection to completed grand lists only, and falls within the exception clause of § 1-19. Section 12-55, however, merely imposes an affirmative duty on the assessor to make completed grand lists available for public inspection. Section 12-55 neither refers to the making or inspection of assessment records nor expressly limits public inspection to grand lists only. The court below correctly concluded that § 1-19 can be construed to provide for public inspection of assessment records beyond those required to be made public by § 12-55 and that § 12-55 is not inconsistent with §§ 1-19 and 1-20.

The contention of the defendant that the granting of the request for inspection will impede the expeditious transaction of public business has no merit because the record below indicates that the defendant has failed to meet his burden of proof on that issue. See *Meriden Record Co.* v. *Browning,* 6 Conn. Cir. Ct. 633; *State* v. *Mayo,* 4 Conn. Cir. Ct. 511.

The defendant has failed to brief sufficiently his third assignment of error, and that assignment must therefore be considered abandoned. *Fleischer* v. *Kregelstein,* 150 Conn. 158, 159. The defendant also abandoned his fourth assignment of error on oral argument. As to the first two assignments of

error, we conclude that the trial court did not err in holding that the documents and other material that the plaintiffs seek to inspect are public records available for inspection under § 1-19 of the General Statutes and must be disclosed.

There is no error.

In this opinion Speziale and Sponzo, Js., concurred.