ATTORNEY GENERAL *vs*. BOARD OF ASSESSORS OF WOBURN.

Middlesex. April 3, 1978. — June 19, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Public Record. Taxation,* Assessors of taxes. *Municipal Corporations,*
Public records. *Words,* "Public record."

Field assessment cards prepared by a private company engaged by a city
to assist it in reassessing the real properties within the boundaries of
the city at 100% of their fair market value and furnished to the board
of assessors as part of the work contracted for were public records as
defined in G. L. c. 4, § 7, Twenty-sixth, and were not exempted from
disclosure by any of the statutory exemptions. [431-433]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on July 15, 1977.

On transfer to the Superior Court, the case was heard by
*Mitchell*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

The case was submitted on briefs.

*Jonathan Brant*, Assistant Attorney General, for the
plaintiff.

*Normand R. D'Amour* for the defendant.

KAPLAN, J. Seeking to comply with the decision in *Sud-
bury* v. *Commissioner of Corps. & Taxation*, 366 Mass. 558
(1974), the defendant board of assessors of Woburn engaged
a private company to assist in reassessing the real properties
within the boundaries of the city at 100% of their fair
market value. Employees of the company inspected the
properties, collated relevant data, and recommended valua-
tions. The details, physical and financial, together with the
inferences drawn from them, were posted by the company
employees on standardized "field assessment cards." These
were turned over to the board as part of the work con-
tracted for, to be used by the board in preparing the actual

tax valuations placed on the properties. Although, as indicated, the *Sudbury* case called for reassessment on the 100% basis, there was no legal requirement that the board go about the task by engaging a private company or by using field cards.

On May 19, 1977, one John DiFranza, a resident of the city, wrote to the chairman of the board asking for a copy of the field card covering his home. He referred to the public records law (G. L. c. 4, § 7, Twenty-sixth). On the same day the chairman replied, denying the request under the claimed authority of *Dunn* v. *Assessors of Sterling*, 361 Mass. 692 (1972). Thereupon, DiFranza, initiating the prescribed statutory procedures (G. L. c. 66, § 10), applied to the supervisor of public records (see G. L. c. 9, § 4) for a determination that the cards were public records under the law and thus subject to inspection and copying. The supervisor on June 22, 1977, made a favorable determination, setting forth his reasons in some detail, and ordered the board to make disclosure accordingly. As the board failed to comply, the supervisor requested the Attorney General, plaintiff herein, to commence an appropriate enforcement action. The Attorney General did so in this court for Suffolk County. A single justice ordered the action transferred to the Superior Court. There the parties entered into "stipulations of fact" describing the situation as set out above. A judge of the Superior Court held for the plaintiff and entered judgment declaring that the field cards were public records and requiring the defendant board to make them available to the public. After the defendant lodged its appeal in the Appeals Court, the plaintiff (appellee) applied to this court for direct appellate review, which we granted.

Under G. L. c. 4, § 7, Twenty-sixth, as appearing in St. 1973, c. 1050, § 1, public records "shall mean all . . . papers . . . or other documentary materials or data, regardless of physical form or characteristics, made or received by any . . . board . . . of any political subdivision," with nine

stated exemptions.[1] General Laws c. 66, § 10, as amended through St. 1976, c. 438, § 2, in effect lays a duty on persons having custody of "public records," as defined, to disclose them on request of "any person" (§ 10 [*a*]), describes procedures for enforcing the duty, which comprehend the procedure followed here (§ 10 [*b*]), and adds that "[i]n any court proceeding pursuant to paragraph (*b*) there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies" (§ 10 [*c*]).

The cards in question appear to fall patly within the current statutory definition (unless one or more of the exemptions applies), but the defendant board points to our decision in the *Dunn* case, *supra.* There the board of assessors of Sterling was upheld in its refusal to disclose field cards produced under contract with a private firm which had been engaged to assist it in making tax assessments. The facts correspond with the present case, but the difference is that the part of G. L. c. 4, § 7, Twenty-sixth, considered pertinent by the *Dunn* court, as it then stood — i.e., as amended through St. 1969, c. 831, § 2, before amendment by the 1973 statute — made the right to disclosure turn on whether the record "has been made or is required to be made by law." This could not be predicated of the cards, which were a means of assisting the board in making assessments, but not a means required by law. See also *Town Crier, Inc.* v. *Chief of Police of Weston*, 361 Mass. 682 (1972); *Hardman* v. *Collector of Taxes of N. Adams*, 317 Mass. 439 (1945). Cf. *Lord* v. *Registrar of Motor Vehicles*, 347 Mass. 608, 611 (1964).

---

[1] The full text of cl. Twenty-sixth (before the listing of exemptions) is: "'Public records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions in that they are: . . . ."

On the assumption that the authority of the *Dunn* case is erased by the new statutory provisions, the defendant board suggests that the exemption of par. (*f*) of cl. Twenty-sixth for "investigatory materials" may attach; but the irrelevance of par. (*f*) appears clearly from its text[2] and from the case of *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59 (1976), where the exemption was explained and applied.[3] Of the other statutory exemptions, par. (*c*), referring to disclosures that involve unwarranted invasions of privacy, and par. (*d*), dealing with certain intra-agency memoranda, conceivably might be thought pertinent, but on consideration they also are seen to be irrelevant.[4]

Our conclusion is not put in question, rather it is strengthened, by the several decisions in other jurisdictions about the disclosure of field cards.[5] Finally, it is possible to foresee

---

[2] Paragraph (*f*) exempts "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."

[3] The materials held exempt under par. (*f*) consisted of reports of police officers about an incident which had led to pending criminal charges.

[4] Clause Twenty-sixth, par. (*c*), exempted "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an invasion of personal privacy" (by St. 1977, c. 691, § 1, effective October 29, 1977, the word "unwarranted" was inserted before the word "invasion"). See *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812 (1978). Cf. *Attorney Gen.* v. *School Comm. of Northampton, ante* 127 (1978). See also *DeLia* v. *Kiernan*, 119 N.J. Super. 581, cert. denied, 62 N.J. 74 (1972).

Paragraph (*d*) exempts "inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but this subparagraph shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based." Cf. *Kottschade* v. *Lundberg*, 280 Minn. 501 (1968).

[5] Field cards were ordered disclosed in *Gold* v. *McDermott*, 347 A.2d 643 (Conn. Supp. 1975); *Menge* v. *Manchester*, 113 N.H. 533 (1973) (distinguishing our *Dunn* case); *Tagliabue* v. *North Bergen*, 9 N.J. 32 (1952); *DeLia* v. *Kiernan, supra*; *Sanchez* v. *Papontas*, 32 App. Div. 2d 948 (N.Y. 1969). A contrary result was reached in *Kottschade* v. *Lundberg, supra*. To evaluate the decisions fairly, the particular statutory or common law background must be consulted.

administrative burdens that will result from the classification of such cards as public records, but those difficulties may be eased by the language of c. 66, § 10 (*a*) (disclosure "at reasonable times and without unreasonable delay"), and in any event could not be allowed to compromise the plain terms of the statutes.

*Judgment affirmed.*