HULL MUNICIPAL LIGHTING PLANT vs. MASSACHUSETTS
MUNICIPAL WHOLESALE ELECTRIC COMPANY.

Plymouth. November 5, 1992. - March 15, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Arbitration*, Authority of arbitrator, Conduct of proceedings. *Subpoena.*
*Practice, Civil*, Subpoena, Discovery. *Public Records. Attorney at Law*,
Work product.

Where a public corporation, claiming attorney-client and work-product
privileges, refused to comply with an arbitrator's subpoena requiring
production of certain documents, the determination whether the docu-
ments were public records, subject to mandatory disclosure under G. L.
c. 66, § 10 (*b*), was a matter for the supervisor of public records, and
was beyond the scope of the arbitrator's authority. [614-615]
Discussion of the authority of an arbitrator under G. L. c. 251, § 7, with
respect to certain forms of discovery in an arbitration proceeding. [615-
617]

CIVIL ACTION commenced in the Superior Court Depart-
ment on Janaury 23, 1986.

Respective motions to enforce an arbitrator's subpoenas,
and to quash the subpoenas, were reported to the Appeals
Court by *John J. O'Brien*, J. The Supreme Judicial Court
granted a request for direct review.

*Kenneth L. Kimmell* (*Jeffrey M. Bernstein* with him) for
the plaintiff.

*Gerald J. Caruso* (*Nicholas J. Scobbo, Jr.*, with him) for
the defendant.

*Scott Harshbarger*, Attorney General, & *Leslie Davies*,
Assistant Attorney General, for the Attorney General, ami-
cus curiae, submitted a brief.

LYNCH, J. This matter arises from a report, pursuant to
G. L. c. 231, § 111 (1990 ed.), and Mass. R. Civ. P. 64, 365

Mass. 831 (1974), by a judge of the Superior Court.[1] The plaintiff, Hull Municipal Lighting Plant (HMLP), filed a motion in the Superior Court in Plymouth County seeking enforcement of subpoenas duces tecum issued by an arbitrator. Massachusetts Municipal Wholesale Electric Company (MMWEC) moved to quash the subpoenas claiming common law privileges and statutory exemptions from the public records statute. The parties subsequently filed a joint motion for reservation and report of the above motions on the grounds that the motions, without disputes as to any material facts, raise pure issues of law, specifically, whether a court may review the underlying merits of subpoenas issued in an arbitration proceeding, and if so, whether the subpoenas were properly issued. The parties assert that resolution of these issues requires a determination whether a public agency may invoke common law privileges and statutory exemptions to prevent disclosure of documents which are subject to the public records statute, G. L. c. 66, § 10 (1990 ed.). We granted the plaintiff's application for direct appellate review. In this court HMLP concedes that the judge of the Superior Court has the power to enforce or to quash the arbitrator's subpoena in accordance with the Massachusetts Rules of Civil Procedure. We conclude that the arbitrator in this case was without authority to apply the public record statute absent a decision by the supervisor of public records delineating what documents among the requested reports are privileged or exempted from the public records act.

We summarize the facts from the parties' statement of agreed facts. MMWEC, created by St. 1975, c. 775, is a public corporation and a political subdivision of the Com-

---

[1]A Superior Court judge may properly report a case in three situations: (1) after jury verdict or finding of fact by a judge; (2) in connection with an interlocutory finding or order by the judge which so affects the merits of the case or controversy that interlocutory review by report is appropriate; and (3) on the request of the parties when all material facts have been agreed to in writing, without any decision by the judge. See Mass. R. Civ. P. 64, 365 Mass. 831 (1974); G. L. c. 231, § 111 (1990 ed.); *Globe Newspaper Co.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 412 Mass. 770, 772 (1992).

414 Mass. 609                                            611

Hull Municipal Lighting Plant *v.* Massachusetts Municipal Wholesale Electric Co.

monwealth. MMWEC's purpose is to plan, to acquire, and to establish independent electric power supply on behalf of municipal light departments and other electric utilities in Massachusetts. Acting as a wholesaler of electric energy, MMWEC either purchases energy in bulk from large generating facilities or participates in the ownership of all or part of electric generating facilities. MMWEC then sells the electricity to its members, to other facilities, and to municipal electric light departments within or without the Commonwealth.

HMLP is a municipal electric plant created by St. 1891, c. 370. The town of Hull, through HMLP, became a member of MMWEC in May of 1976. HMLP purchases electricity from MMWEC and sells the electricity to its retail customers. HMLP and MMWEC have entered into a number of power sales agreements (PSA) which are contracts through which MMWEC sells and participants purchase electricity. Four of the PSA between MMWEC and HMLP are related to the nuclear generating unit known as Seabrook, and the subject of the arbitration proceeding. The PSA are identical in all material respects and were created between 1976 and 1979.[2]

On January 23, 1986, HMLP filed an action in the Superior Court Department against MMWEC alleging that MMWEC breached various contractual and fiduciary duties to HMLP in connection with HMLP's purchases of project capability in Seabrook pursuant to the PSA. MMWEC moved to stay the proceeding pending arbitration. A judge in the Superior Court issued an order staying the action and

---

[2]During this period, MMWEC acquired its total 11.59% ownership interest in Seabrook and is one of twelve joint owners of Seabrook. Public Service Company of New Hampshire (PSNH) is the joint owner with the largest ownership share totalling 35% of Seabrook. PSNH was responsible for the over-all engineering, design, and construction of Seabrook. As a result, PSNH hired Yankee Atomic Electric Company (Yankee) to manage the construction, and United Engineers & Constructors, Inc. (UE&C) as the architect and engineer. Seabrook's construction, however, was plagued by controversy, delay, and cost overruns.

compelling arbitration on March 5, 1986, pursuant to identical arbitration provisions in the PSA.

Separate from the litigation pending between MMWEC and HMLP, the board of directors of MMWEC commissioned attorney Alan Roth to investigate and to evaluate any possible claims that MMWEC might possess against any party involved in the design, construction, and management of Seabrook.[3] Mr. Roth released a final report in June of 1988, entitled "Report to MMWEC Seabrook Committee from MMWEC's Seabrook Evaluation Task Force on Seabrook Mismanagement Resulting in Cost Overruns and Schedule Delays; Misrepresentation by Seabrook Management, and Damage to MMWEC." The report is commonly known as the "Roth Report" and it and other protected materials are the subject matter of the discovery dispute.[4] Mr. Roth prepared the report in anticipation of litigation between MMWEC and PSNH, Yankee, and UE&C. The report contains Roth's analyses, mental impressions, conclusions, and opinions on the validity of MMWEC's claims and defenses that may be raised in response to them.

---

[3]While arbitration between HMLP and MMWEC was pending, other litigation arose around MMWEC's Seabrook related projects. In 1988, PSNH filed for protection from its creditors under c. 11 of the United States Bankruptcy Code. PSNH emerged from c. 11 in May, 1991. Before MMWEC filed its proof of claims against PSNH, 98% of the joint owners of Seabrook entered into an agreement settling all claims MMWEC possessed against PSNH and Yankee. In April, 1992, MMWEC reached a settlement with UE&C.

[4]Other utilities have attempted to obtain the Roth Report. The municipal light departments of Hudson, Danvers, and Peabody are suing MMWEC claiming violations of MMWEC's obligations to them by entering into the comprehensive Seabrook settlement. They allege that MMWEC entered into the settlement without obtaining appropriate value in return. Final judgments have entered against these municipalities and they are appealing. Additionally, the New Hampshire Electric Cooperative attempted to obtain the report through a subpoena issued by the United States Bankruptcy Court for the District of New Hampshire. On appeal, the United States District Court for New Hampshire reversed the order finding that the report was protected by attorney-client and work-product privileges.

On April 20, 1989, HMLP requested that MMWEC produce the Roth Report pursuant to the public records act, G. L. c. 66, § 10. MMWEC refused. HMLP did not petition the supervisor of public records or bring an action in Superior Court. Instead, on May 31, 1989, HMLP again requested that MMWEC produce the report as part of its ongoing obligation to comply with document production requests in connection with the arbitration. MMWEC refused, claiming attorney-client and work-product privileges.

In April, 1992, HMLP made a final attempt to obtain the reports which MMWEC refused. After that proved to be futile, HMLP then filed a motion to compel MMWEC to produce all reports. The arbitrator granted the motion conditioned on the execution of a confidentiality agreement. MMWEC did not execute the confidentiality agreement that HMLP forwarded, choosing instead to file a motion for reconsideration. The arbitrator denied the motion, issuing an order to amend the prior order thereby providing for additional confidentiality provisions. When MMWEC refused to produce the reports, the arbitrator at HMLP's request issued subpoenas duces tecum to the keeper of the records of MMWEC and MMWEC's counsel requiring the production of the requested reports. MMWEC refused to comply, triggering the current action by HMLP.

HMLP contends that this court should order MMWEC to comply with the subpoenas and reserve ruling on the underlying merits of the arbitrator's discovery orders until the arbitration is complete to avoid entangling the court in the merits of the parties' dispute. Further, HMLP argues that MMWEC has an avenue of appeal to this court whereby the arbitrator's decision may be reviewed on completion of the proceedings and vacated, if erroneous, under G. L. c. 251, § 12 (1990 ed.). MMWEC argues that this court possesses both the authority and the jurisdiction to review the arbitrator's subpoenas and that the arbitrator has exceeded his statutory authority in refusing to apply the attorney-client, work-product doctrine, or statutory exemption.

1. Since HLMP concedes that the court has the authority to quash the arbitrator's subpoenas, we begin with the question of the arbitrator's authority to apply the public record statute.[5]

Public records are broadly defined and include all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth, unless one of nine statutory exemptions is applicable. G. L. c. 4, § 7, Twenty-sixth (*a*)-(*l*) (1990 ed.). See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 430-431 (1983) (public records are broadly defined as records and documents in possession of public officials); *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 61 (1976) (documents are presumed to be public records when possessed by public entity). See also Brant, Public Records FIPA and CORI: How Massachusetts Balances Privacy and the Right to Know, 15 Suffolk U.L. Rev. 23, 24-34 (1981) (discussing public records law and statutory exemptions therefrom). On request public records are subject to mandatory disclosure. See G. L. c. 66, § 10 (*b*). Statutory exemptions are strictly construed and the custodian of the document has the burden of proving that the requested document is not within the purview of a public record. See *Attorney Gen.* v. *Assistant Comm'r of the Real Property Dep't of Boston*, 380 Mass. 623, 625 (1980); *Attorney Gen.* v. *Assessors of Woburn*, 375 Mass. 430, 432 (1978). Failure or refusal by the custodian of records to comply with a discovery request may be addressed by a petition to the supervisor of public records who decides whether documents are within the statute. G. L. c. 66, § 10 (*b*); 950 Code Mass. Regs. § 32.04(3) (1988). Subsequent failure to comply with an order issued by the supervisor is referred to the Attorney General or a district attorney who may take whatever measures are necessary to ensure compliance. *Id.* The Superior Court and the Supreme Judicial Court are empowered to order

[5]Because of the strong public interest and the view we take of the matters raised we elect to reach the merits.

compliance. G. L. c. 66, § 10 (*b*). The arbitrator stated that, in ordering MMWEC to comply with HMLP's discovery motions, it is necessary and proper for the arbitrator to consider all applicable law. *Babets* v. *Secretary of Human Servs.*, 403 Mass. 230, 237 n.8 (1988). However, the scope of the arbitration act does not confer on the arbitrator the power to determine the scope of the public record statute. As the statute indicates, only the supervisor of public records, the Superior Court, or this court is authorized to make such decisions. See G. L. c. 66, § 10 (*b*).

2. General Laws c. 251, § 7 (1990 ed.), permits certain types of discovery. Accordingly, any party to an arbitration proceeding may make discovery requests in accordance with Mass. R. Civ. P. 34 (a), 365 Mass. 792 (1974); Mass. R. Civ. P. 26 (b), 365 Mass. 772 (1974).[6] Enforcement and objections to discovery requests are made to the arbitrator, who may issue orders as deemed necessary. See G. L. c. 251, § 7 (*e*).[7] Generally, discovery is permissible of any nonprivileged material which is relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence. Mass. R. Civ. P. 26 (b) (1). Materials which are prepared in anticipation of litigation and are otherwise discoverable under rule 26 (b) (1) may be only discovered on a showing of

---

[6]Rule 34 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 792 (1974), states in pertinent part: "Any party may serve on any other party a request (1) to produce and permit the party making the request . . . to inspect and copy, any designated documents . . . which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served."

[7]General Laws c. 251, § 7 (*e*) (1990 ed.), provides that: "Any party in an arbitration proceeding may serve upon any other party a request for the production of documents and things . . . for inspection and other purpose as permitted by and in accordance with the procedure set forth in rule thirty-four . . . in effect at the time the request is made. The enforcement and objections of such request shall be made to the arbitrators and the arbitrators only shall issue orders as they deem necessary on objections and on requests for enforcement of production both prior to and after the commencement of the hearing."

In view of the provisions of c. 251, as a whole, it is unlikely that the Legislature intended by that language to oust the court's jurisdiction.

substantial need by the party seeking the documents and of that party's inability to obtain the substantial equivalent of the information elsewhere without undue hardship.[8] Mass. R. Civ. P. 26 (b) (3). If the required showing is made, the order must protect against disclosure of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* The arbitrator's order in this case demanded that the documents be produced only after the execution of strict confidentiality agreements. The documents are to be kept in the arbitrator's office, no copies are permitted, and, at the completion of the proceedings, the documents are to be returned to MMWEC, and HMLP's notes are to be destroyed. Further, the order states that the information gleaned from the documents is to be used solely in connection with the arbitration proceedings and not divulged to any other party.

When document discovery requests are not complied with, the arbitrator may issue a subpoena pursuant to G. L. c. 251, § 7 (*a*), which provides in relevant part: "The arbitrators may cause to be issued subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence. . . . Subpoenas so issued shall be served, and upon application to the court by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in civil action." Service and enforcement of subpoenas are governed by the rules of civil procedure. Mass. R. Civ. P. 45 (b), 365 Mass. 809 (1974). The rule permits the party served with a subpoena to move to quash or to modify the subpoena. J.W. Smith & H.B. Zobel, Rules Practice § 45.8, at 141 (1977 & Supp. 1993). It is within this court's power to vacate any subpoena which it determines is unreasonable, oppressive, irrelevant, or improper. See Mass. R. Civ. P. 45 (b); *Roche* v. *Massachusetts Bay Transp. Auth.*, 400 Mass. 217, 222 (1987). See also

---

[8]HMLP maintains that the requested reports will support HMLP's case on the merits, rebut MMWEC's defense of statute of limitations expiration, and impeach the expert testimony of MMWEC.

*Matter of Pappas*, 358 Mass. 604, 612 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. . . . [T]he trial court [has] substantial latitude to fashion protective orders." *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20, 36 (1984). If it is evident that the arbitrator has abused his discretion or authority in issuing the subpoenas, then the trial judge may overrule his decision. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 799 (1987) (scope and conduct of discovery is within trial judge's discretion); *Bishop* v. *Klein*, 380 Mass. 285, 288 (1980) (judge has discretion regarding pretrial discovery requests).

On remand, therefore, the decision to enforce or to quash the subpoenas is a matter within the judge's discretion once the supervisor of public records has decided the questions arising under the public records law. We do not reach the question of privilege in the absence of a decision by the supervisor of public records. The arbitrator cannot make that determination.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*