Curran, Dennis J., J.
Mr. Gentile brought this wrongful death lawsuit against the defendants Biogen Idee, Inc, and Elan Pharmaceuticals, Inc., alleging that the drug Tysabri®, which the defendants developed and marketed, caused his wife’s death. It is undisputed that as a result of taking Tysabri®, Mrs. Gentile developed a fatal brain infection called Progressive Multifocal Leukoencephalopathy (“PML”). The amended complaint raises a number of causes of action including negligence, failure to warn, negligent misrepresentation, fraud, breach of implied warranty of merchantability and fitness for a particular use, and violation of G.L.c. 93A.
Mr. Gentile now moves to compel defendant Biogen Indec, Inc. to comply with certain discovery requests.
On December 14, 2012, he served Biogen with a Second Request for Production. Biogen objected to a number of the documents sought, arguing that the discovery requests were overbroad and unrelated to the issues in this case. Biogen’s objections pertain to three general categories of documents: (1) sales and marketing documents related to Tysabri®, (2) documents related to Mrs. Gentile’s prescribing physician’s relationship with Biogen; and (3) documents related to animal studies and published literature funded or sponsored by Biogen.
DISCUSSION
I.THE STANDARD
The Rules obviously permit the “discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .” Mass.R.Civ.P. 26(b)(1). The information sought should be “reasonably calculated to lead to the discovery of admissible evidence.” HullMun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 414 Mass. 609, 615 (1993).
II.DOCUMENTS RELATED TO MARKETING MATERIALS
The first category of documents that Mr. Gentile seeks to compel is sales and marketing documents related to Tysabri®. Biogen argues that the only issue in this case is whether the defendants adequately warned the prescribing physician of the known risks associated with Tysabri®. As such, it argues that only marketing documents provided to the prescribing physician are relevant. It further argues that the prescribing physician testified during her deposition that the defendants did not influence her decision to prescribe Tysabri® to Mrs. Gentile.
While the crux of Mr. Gentile’s case is a failure to warn, he also claims that Biogen committed negligent misrepresentation and fraud based on its conduct in advertising, marketing, sales, and other promotional efforts. Thus for discovery purposes, sales and marketing documents related to Tysabri® are reasonably relevant to Mr. Gentile’s claims. See Cunningham v. SmithklineBeecham, 255 F.R.D. 474, 479-80 (Ñ.D.Ind. 2009) (explaining that if the drug manufacturer knew of dangers of drug and failed to disclose that information in its advertising, the manufacturer’s marketing and advertising of drug was relevant to plaintiffs fraud claim. Mr. Gentile’s request is allowed as to Biogen’s marketing materials. See Solimene, 399 Mass, at 799.
III.DOCUMENTS RELATED TO THE PRESCRIBING PHYSICIAN’S RELATIONSHIP WITH THE CORPORATE DEFENDANTS
Mr. Gentile next seeks to compel the production of documents related to Mrs. Gentile’s prescribing physician’s role on Biogen’s advisory board as well as the compensation it paid her. Biogen argues that this case should be narrowly restricted, even at the discovery stage, to the issue of whether Biogen adequately warned the prescribing physician of the risks associated with Tysabri®. But the physician’s relationship with Biogen and her possible bias in favor of Tysabri® is wholly relevant to this case. This category of documents is discoverable.
IV.DOCUMENTS RELATED TO ANIMAL STUDIES AND PUBLISHED SCHOLARLY ARTICLES
The last category of documents that Mr. Gentile seeks to compel are documents concerning animal study testing relating to Tysabri® and published manuscripts and articles relating to Tysabri® funded by Biogen. The amended complaint alleges that Biogen misrepresented, failed to disclose, provided false product information, or concealed material facts concerning the safety of Tysabri®. Biogen’s knowledge of the possible dangers of Tysabri® is relevant to Mr. Gentile’s claims. Further, Biogen’s representations *616 with respect to Tysabri© and its safety in scholarly materials is relevant. This category of documents is also discoverable.
V. DATE RANGE FOR DISCOVERY
Mr. Gentile seeks documents from July 1, 1996 through the date of Biogen’s responses. Biogen counters that the appropriate date range should be from 2005 through 2011.
In 1996, Athena Neurosciences, Inc. filed an inves-tigational new drug application for Tysabri© with the Food and Drug Administration. In 2000, Biogen and co-defendant Elan Pharmaceuticals, Inc. entered into an agreement to develop and market Tysabri®. At the time Biogen became involved with Tysabri®, the drug was in the process of being tested and developed. The first instance of Tysabri® causing PML was reported in 2005.
Mr. Gentile maintains that Tysabri® was linked to PML as early as the beginning of the 1990s. He further contends that Tysabri® was being developed and tested for years before its approval by the FDA. It is reasonable to infer that Biogen could have learned of the risks associated with Tysabri® through its testing and development. Mr. Gentile is entitled to documents from 1996 through Biogen’s response to this discovery request.
VI. RULE 30(b)(6) DEPOSITIONS
On January 16, 2013, Mr. Gentile served a Mass.R.Civ.P. 30(b)(6) notice on Biogen in which he seeks to compel it to produce certain corporate representatives. Biogen’s effort to hinder this effort too must fail. Biogen must, and will, comply.
ORDER
For these reasons, the plaintiff estate’s motion to compel is ALLOWED. As such, the Court orders that Biogen: 1) produce the sales and marketing documents requested in Mr. Gentile’s Second Request for Production; produce documents relating to Mrs. Gentile’s prescribing physician’s role on Biogen’s advisory board, clinical trials and compensation paid her by Biogen, and other documents related to her relationship with Biogen as requested in the Second Request for Production; 3.) produce documents relating to animal studies and published literature funded by Biogen as requested in the Second Request for Production; 4.) produce the ordered documents from 1996 until the date of production; and finally, (5) produce corporate representatives for the Mass.R.Civ.P. 30(b)(6) deposition topics noticed by Mr. Gentile.