COMMISSIONER OF PUBLIC SAFETY ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(SC 18617)

TAX ASSESSOR OF THE TOWN OF NORTH STONINGTON ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(SC 18618)

JUDICIAL BRANCH *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(SC 18619)

AFSCME, COUNCIL 4, LOCALS 387, 391 AND 1565 *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(SC 18620)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued December 3, 2010—officially released June 28, 2011

*Stephen R. Sarnoski*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, former attorney general, and *Terrence O'Neill* and *John E. Tucker*, assistant attorneys general, for the appellants (plaintiff commissioner of public safety et al.).

*Frank N. Eppinger*, for the appellants (plaintiff tax assessor of the town of North Stonington et al.).

*Viviana L. Livesay*, with whom, on the brief, was *Adam P. Mauriello*, for the appellant (plaintiff judicial branch).

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellant (plaintiff AFSCME, Council 4, Locals 387, 391 and 1565).

*Lisa Fein Siegel*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (named defendant).

ZARELLA, J. The sole issue in these appeals is whether General Statutes § 1-217,[1] which prohibits public agencies from disclosing, pursuant to the Freedom of Information Act (act); General Statutes § 1-200 et seq.; the home addresses of various federal, state and local government officials and employees, is applicable to grand lists of motor vehicles[2] and their component data provided to town assessors by the department

[1] General Statutes § 1-217 provides: "(a) No public agency may disclose, under the Freedom of Information Act, the residential address of any of the following persons:

"(1) A federal court judge, federal court magistrate, judge of the Superior Court, Appellate Court or Supreme Court of the state, or family support magistrate;

"(2) A sworn member of a municipal police department, a sworn member of the Division of State Police within the Department of Public Safety or a sworn law enforcement officer within the Department of Environmental Protection;

"(3) An employee of the Department of Correction;

"(4) An attorney-at-law who represents or has represented the state in a criminal prosecution;

"(5) An attorney-at-law who is or has been employed by the Public Defender Services Division or a social worker who is employed by the Public Defender Services Division;

"(6) An inspector employed by the Division of Criminal Justice;

"(7) A firefighter;

"(8) An employee of the Department of Children and Families;

"(9) A member or employee of the Board of Pardons and Paroles;

"(10) An employee of the judicial branch;

"(11) An employee of the Department of Mental Health and Addiction Services who provides direct care to patients; or

"(12) A member or employee of the Commission on Human Rights and Opportunities.

"(b) The business address of any person described in this section shall be subject to disclosure under section 1-210. The provisions of this section shall not apply to Department of Motor Vehicles records described in section 14-10."

[2] The grand list is promulgated pursuant to General Statutes § 12-55, which provides in relevant part: "(a) On or before the thirty-first day of January of each year, except as otherwise specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each such grand list shall contain the assessed values of all property in the town, reflecting the statutory exemption or exemptions to which each

of motor vehicles (department) pursuant to General Statutes (Rev. to 2009) § 14-163.[3] The plaintiffs, the commissioner of public safety, the commissioner of children

property or property owner is entitled, and including, where applicable, any assessment penalty added in accordance with section 12-41 or 12-57a for the assessment year commencing on the October first immediately preceding. The assessor or board of assessors shall lodge the grand list for public inspection, in the office of the assessor on or before said thirty-first day of January, or on or before the day otherwise specifically provided by law for the completion of such grand list. The town's assessor or board of assessors shall take and subscribe to the oath, pursuant to section 1-25, which shall be certified by the officer administering the same and endorsed upon or attached to such grand list. For the grand list of October 1, 2000, and each grand list thereafter, each assessor or member of a board of assessors who signs the grand list shall be certified in accordance with the provisions of section 12-40a. . . ."

[3] General Statutes (Rev. to 2009) § 14-163 provides: "(a) The commissioner shall compile information concerning motor vehicles and snowmobiles subject to property taxation pursuant to section 12-71 using the records of the Department of Motor Vehicles and information reported by owners of motor vehicles and snowmobiles. In addition to any other information the owner of a motor vehicle or snowmobile is required to file with the commissioner by law, such owner shall provide the commissioner with the name of the town in which such owner's motor vehicle or snowmobile is to be set in the list for property tax purposes, pursuant to section 12-71. On or before December 1, 2004, and annually thereafter, the commissioner shall furnish to each assessor in this state a list identifying motor vehicles and snowmobiles that are subject to property taxation in each such assessor's town. Said list shall include the names and addresses of the owners of such motor vehicles and snowmobiles, together with the vehicle identification numbers for all such vehicles for which such numbers are available.

"(b) On or before October 1, 2004, and annually thereafter, the commissioner shall furnish to each assessor in this state a list identifying motor vehicles and snowmobiles in each such assessor's town that were registered subsequent to the first day of October of the assessment year immediately preceding, but prior to the first day of August in such assessment year, and that are subject to property taxation on a supplemental list pursuant to section 12-71b. In addition to the information for each such vehicle and snowmobile specified under subsection (a) of this section that is available to the commissioner, the list provided under this subsection shall include a code related to the date of registration of each such vehicle or snowmobile."

We note that in Public Acts 2010, No. 10-110, § 22 (P.A. 10-110), the legislature amended § 14-163 by, inter alia, adding a new subsection (c), which provides: "No assessor or tax collector shall disclose any information contained in any list provided by the commissioner pursuant to subsections (a) and (b) of this section if the commissioner is not required to provide such information or if such information is protected from disclosure under

and families, the commissioner of correction (state agencies), the judicial branch, Nicholas Mullane II and Darryl DelGrosso, as first selectman and assessor, respectively, of the town of North Stonington (town), and AFSCME, Council 4, Locals 387, 391 and 1565 (union), each appeal[4] from the judgments of the trial court dismissing their administrative appeals from the decision of the named defendant, the freedom of information commission (commission), ordering DelGrosso to provide to the complainant, Peter Sachs, an exact electronic copy of the file that the department had provided to the town pursuant to § 14-163. We conclude that § 1-217 applies to motor vehicle grand lists and their component data provided to the town assessors pursuant to § 14-163. Accordingly, we reverse the judgments of the trial court.

The record reveals the following relevant facts and procedural history. On June 16, 2008, the complainant, who is licensed as an attorney and a private investigator, asked DelGrosso to provide him with an exact electronic copy of the file, known electronically as "MVR102.dat," that the department had provided to DelGrosso pursuant to § 14-163 for use in preparing the town's motor vehicle grand list (electronic file).[5] The

state or federal law." See also P.A. 10-110, § 22 (a) and (b) (changing word "furnish" to "provide" in § 14-163 [a] and [b]).

[4] Each of the plaintiffs appealed separately from the judgment of the trial court to the Appellate Court. Thereafter, the Appellate Court granted the freedom of information commission's motion for permission to file a single brief responding to the plaintiffs' claims in each appeal. This court subsequently transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] Shortly before, on June 9, 2008, the complainant had requested an exact electronic copy of the town's real estate grand list. DelGrosso informed the complainant that he would provide a copy of the real estate grand list for a fee of $25, which would compensate the town for DelGrosso's time spent redacting information protected by § 1-217. The complainant then withdrew his request for the real estate grand list and submitted his request for the electronic file at issue in this appeal.

various electronic files provided by the department[6] contain complete lists of all motor vehicles and snowmobiles garaged in a particular town, and registration information including each vehicle owner's name, registration address and birth date, as well as the vehicle's year, make, model and vehicle identification number. When DelGrosso creates the town's motor vehicle grand list, he modifies the electronic file prior to publicizing the list by, inter alia, redacting the registration addresses, which generally correspond to the residential addresses, of approximately forty town residents, including judges, state troopers and correction employees, which he identifies as protected from disclosure by § 1-217.[7] On June 17, 2008, DelGrosso replied to the complainant that the entire electronic file was protected from disclosure pursuant to § 1-217, but offered to provide a version with the redaction of approximately forty names and addresses protected under that statute, if the complainant would compensate the town for DelGrosso's time, payable in advance.

On June 18, 2008, the complainant appealed from DelGrosso's denial of his request to the commission, and the plaintiffs subsequently intervened as parties to those proceedings.[8] Following a contested case hearing, the commission accepted the report of its commissioner, who was acting as the hearing officer, and issued

[6] The department contracts with private vendors, Quality Data Services and Tumbleweed Communications, to produce and provide these data files in a sortable format.

[7] DelGrosso redacts the names either at the request of a town resident who is within the scope of § 1-217, or on his own initiative, if, given the town's relatively small population, he recognizes a person as subject to that statute.

[8] Each of the plaintiffs moved to intervene as parties in the proceedings before the commission. A commissioner, acting as hearing officer, granted those motions limited to providing legal argument and briefs, although he did permit attorneys representing the department of public safety and the department of correction to question witnesses at the contested case hearing.

a decision[9] finding that the electronic file is the electronic version of the town's motor vehicle grand list and concluding that, under *Davis* v. *Freedom of Information Commission*, 47 Conn. Sup. 309, 790 A.2d 1188 (2001), aff'd, 259 Conn. 45, 787 A.2d 530 (2002) (per curiam), General Statutes § 12-55 (a) does not permit redactions or omissions from the grand list that the assessor is required to lodge for public inspection. The commission determined that "the names and addresses of the people whose property comprises the motor vehicle grand list are both necessary and integral to the completeness and accuracy of the list, as well as the reasons why it is publicly available," and that construing § 1-217 "to permit the [plaintiffs] to redact any names or residential addresses from the motor vehicle grand list would require finding an implicit repeal of § 12-55 (a) . . . and Connecticut's historical [practice] of making grand lists, including [those limited to] personal property grand lists, available to the public for correction and disputation." (Internal quotation marks omitted.) *Sachs* v. *Freedom of Information Commission*, Docket No. FIC 2008-412 (January 14, 2009). The commission further concluded that § 1-217 "applies only to the agency for which a protected employee works," and "does not exempt from disclosure names and residential addresses when they are part of grand lists." Id. Accordingly, the commission ordered the town to provide to the complainant an exact electronic copy of the electronic file. Id.

The plaintiffs filed separate administrative appeals from the decision of the commission to the trial court pursuant to General Statutes §§ 4-183 and 1-206. After granting the plaintiffs' unopposed motions for a stay of

[9] The commission concluded as a threshold matter that the plaintiffs are "public agencies," as defined by General Statutes § 1-200 (1), subject to the act, and that the electronic file is a "public record" as defined by General Statutes §§ 1-200 (5) and 1-210 (a). We note that these threshold conclusions are not at issue in this appeal.

the commission's decision, the trial court consolidated the five matters for a hearing and decision. Thereafter, the court issued a memorandum of decision concluding that the commission's factual determination that the electronic file was in essence the town's motor vehicle grand list was supported by substantial evidence, and that the plaintiffs' proffered interpretation of § 1-217 "is inconsistent with the long-standing right of the public to inspect the entire grand list." The trial court noted that, although the court in *Davis* v. *Freedom of Information Commission*, supra, 47 Conn. Sup. 309, "did not consider the applicability of § 1-217 to the assessor's role, [that case recognizes] the well-recognized presumption in favor of openness in the preparation and dissemination of the § 12-55 grand list." The trial court rejected the plaintiffs' argument that, based on the town's population, "full disclosure of the grand list would mean that the addresses of persons protected by § 1-217 would be easily revealed" because the compilation of names and addresses did "not identify any person as one in the § 1-217 class . . . ." The trial court further concluded that "it would undercut the 'harmony' of § 12-55 with § 1-217 to allow or require the assessor to redact either the [electronic file] or the grand list before it becomes publicly available."[10] Accordingly, the trial court rendered judgments dismissing the administrative appeals. These appeals followed.[11] See footnote 4 of this opinion.

---

[10] The trial court rejected, however, the commission's conclusion that " 'the most obvious and likely place' to obtain a record containing a residential address is the agency where he or she is employed." The trial court called a grand list, for example, "distinguishable from a directory of town employees with title[s] and street address[es]," to which § 1-217 "would clearly apply." The court further rejected the commission's determination that § 1-217 applies only to a protected person's employing agency, emphasizing that "[a]*ny* governmental official must not disclose the residential address of an individual protected by § 1-217." (Emphasis in original.)

[11] The trial court subsequently granted the plaintiffs' unopposed motions for a stay pending these appeals pursuant to Practice Book § 61-12.

On appeal, the plaintiffs claim that § 12-55 is inapplicable to this case because the electronic file is not the motor vehicle grand list; rather, they argue it is raw data that the assessor must check for accuracy, including equalizing assessments, before taking an oath on the list pursuant to § 12-55 (b). The plaintiffs further claim that, even if the electronic file is the equivalent of the motor vehicle grand list, the trial court improperly concluded that a grand list made public pursuant to § 12-55 (a) is not subject to redaction under § 1-217. Finally, the state agencies claim that the enactment of Public Acts 2010, No. 10-110, § 22 (P.A. 10-110), has rendered these appeals moot by resolving the statutory issue conclusively in their favor.

I

As a threshold matter, we address the state agencies' claim, made in a supplemental authorities letter submitted pursuant to Practice Book § 67-10, that the enactment of P.A. 10-110, § 22, has rendered these appeals moot by resolving the statutory issue conclusively in their favor. In P.A. 10-110, § 22, the legislature amended § 14-163 by, inter alia, adding a new subsection (c) which provides: "No assessor or tax collector shall disclose any information contained in any list provided by the commissioner pursuant to subsections (a) and (b) of this section if the commissioner is not required to provide such information or if such information is protected from disclosure under state or federal law." See also footnote 3 of this opinion.

"Whether an action is moot implicates a court's subject matter jurisdiction and is therefore a question of law over which we exercise plenary review. . . . A case is considered moot if [the] court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Citation omitted; internal quotation marks omitted.) *Vincent Metro, LLC* v. *Yah Realty, LLC,*

297 Conn. 489, 495, 1 A.3d 1026 (2010). As a jurisdictional matter, we disagree with the state agencies with respect to the potential effect of P.A. 10-110, § 22. Even if P.A. 10-110, § 22, is directly on point, operates retroactively and, therefore, conclusively resolves these appeals in the plaintiffs' favor, it does not render them moot. It simply would change the analysis by which we provide the plaintiffs with their desired practical relief of reversing the judgments of the trial court.

With respect to the import of P.A. 10-110, § 22, itself, we further conclude that, even if deemed retroactively applicable, it is not by itself dispositive of this appeal. Although P.A. 10-110, § 22, precludes assessors from disclosing information provided by the department that is "protected from disclosure under state or federal law," that phrase simply begs the question presented by the commission's arguments in this appeal, namely, that § 1-217 is inapplicable to grand lists and their component data.

II

With respect to the plaintiffs' statutory claims, they contend that, even assuming that the electronic file is the equivalent of the motor vehicle grand list,[12] the trial court nevertheless improperly concluded that a grand list made public pursuant to § 12-55 (a) is not subject to redaction under § 1-217. To this end, the state agencies and the union argue that the trial court improperly relied on *Davis* v. *Freedom of Information Commission*, supra, 47 Conn. Sup. 309, and *Gold* v. *McDermott*, 32 Conn. Sup. 583, 347 A.2d 643 (App. Sess. 1975), because those cases did not concern § 1-217 or any other exceptions to the act applicable to assessors.

---

[12] We note that the state agencies also contend that the electronic file is not the legal equivalent of the motor vehicle grand list because it simply is raw uncorrected data that lacks the vehicles' assessed values, which the assessor must add to create the grand list.

Rather, the plaintiffs claim that the language of § 1-217 clearly and unambiguously effectuates its purpose of protecting the enumerated categories of government employees and officials whose employment duties expose them to individuals who might wish to harm them or their families. Relying on the legislature's recent rejection of amendments to § 1-217 that expressly would have permitted the disclosure of these addresses in connection with, inter alia, grand lists or voter registration lists, the plaintiffs further contend that the commission's construction of § 1-217 is illogical because it shields that information from disclosure by some, but not all, sources, and, as put by the state agencies, affords "no protection at all from a creative and inquisitive miscreant bent on locating and harming a specific individual or his/her family." Thus, the plaintiffs, noting the more limited scope of the redactions performed initially by the department pursuant to General Statutes (Rev. to 2009) § 14-10 (e)[18] before providing

---

[18] General Statutes (Rev. to 2009) § 14-10 provides in relevant part: "(a) For the purposes of this section:

"(1) 'Disclose' means to engage in any practice or conduct to make available and make known, by any means of communication, personal information or highly restricted personal information contained in a motor vehicle record pertaining to an individual to any other individual, organization or entity;

"(2) 'Motor vehicle record' means any record that pertains to an operator's license, learner's permit, identity card, registration, certificate of title or any other document issued by the Department of Motor Vehicles;

"(3) 'Personal information' means information that identifies an individual and includes an individual's photograph or computerized image, Social Security number, operator's license number, name, address other than the zip code, telephone number, or medical or disability information, but does not include information on motor vehicle accidents or violations, or information relative to the status of an operator's license, registration or insurance coverage . . . .

"(c) (1) All records of the Department of Motor Vehicles pertaining to the application for registration, and the registration, of motor vehicles of the current or previous three years shall be maintained by the commissioner at the main office of the department. Any such records over three years old may be destroyed at the discretion of the commissioner. (2) Before disclosing personal information pertaining to an applicant or registrant from such motor vehicle records or allowing the inspection of any such record con-

the electronic file, argue that DelGrosso properly declined to provide the electronic file to the complainant without first redacting information therein protected by § 1-217.

In response, the commission, emphasizing that the trial court properly deferred to its statutory analysis, contends that any redaction of the grand list, including the electronic file that essentially is the town's motor vehicle grand list, contravenes centuries of well settled common and statutory law requiring that the grand list,

---

taining such personal information in the course of any transaction conducted at such main office, the commissioner shall ascertain whether such disclosure is authorized under subsection (f) of this section, and require the person or entity making the request to (A) complete an application that shall be on a form prescribed by the commissioner, and (B) provide two forms of acceptable identification. An attorney-at-law admitted to practice in this state may provide his or her juris number to the commissioner in lieu of the requirements of subparagraph (B) of this subdivision. The commissioner may disclose such personal information or permit the inspection of such record containing such information only if such disclosure is authorized under subsection (f) of this section. . . .

"(e) In the event (1) a federal court judge, federal court magistrate or judge of the Superior Court, Appellate Court or Supreme Court of the state, (2) a member of a municipal police department or a member of the Division of State Police within the Department of Public Safety, (3) an employee of the Department of Correction, (4) an attorney-at-law who represents or has represented the state in a criminal prosecution, (5) a member or employee of the Board of Pardons and Paroles, (6) a judicial branch employee regularly engaged in court-ordered enforcement or investigatory activities, (7) an inspector employed by the Division of Criminal Justice, (8) a federal law enforcement officer who works and resides in this state, or (9) a state referee under section 52-434, submits a written request and furnishes such individual's business address to the commissioner, such business address only shall be disclosed or available for public inspection to the extent authorized by this section.

"(f) The commissioner may disclose personal information from a motor vehicle record to:

"(1) Any federal, state or local government agency in carrying out its functions or to any individual or entity acting on behalf of any such agency . . . ."

We note that, in Public Acts 2010, No. 10-110, § 28, the legislature amended § 14-10 in relevant part by expanding the scope of subsection (e) to include "lake patrol[men] appointed pursuant to subsection (a) of section 7-151b engaged in boating law enforcement . . . ."

as the tax roll, be complete, accurate and open for public inspection. The commission also relies on *Davis* v. *Freedom of Information Commission*, supra, 47 Conn. Sup. 309, and contends that, in the absence of specific language on point, § 12-55 (a) does not permit any redactions to or omissions from a motor vehicle grand list, even if other laws preclude the disclosure of certain information contained therein. The commission further contends that the plaintiffs' application of § 1-217 impermissibly would work an implied repeal of § 12-55, and, given the practical issues attendant to notifying the assessor of those residents who are protected under § 1-217, is unworkable and promises only illusory protection, especially in larger municipalities.[14]

Assuming, without deciding, that substantial evidence supports the commission's determination that the electronic file is the equivalent of the motor vehicle grand list, we conclude that § 1-217 applies to motor vehicle grand lists and any component data provided pursuant to § 14-163. Accordingly, we disagree with the decision of the trial court holding to the contrary.

It is well established that an administrative agency's decision under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., with respect to the construction of a statute is not entitled to special deference when that determination "has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 716–17, 6 A.3d 763 (2010). Thus, because this case presents an issue of statutory construction that has never been subjected to judicial scrutiny and lacks a time-tested agency interpretation, the commis-

---

[14] The commission notes, specifically, the ready access to individuals' personal information on various commercial websites, notwithstanding those persons' status under § 1-217 or desire to keep their information unlisted in traditional directories.

sion's determination regarding the applicability of § 1-217 to motor vehicle grand lists promulgated pursuant to § 12-55, and their component data, is not entitled to the traditional deference normally accorded an agency's interpretation.[15] Instead, "[w]ell settled principles of

[15] The commission cites numerous agency decisions in support of the proposition that, in no case, has it "interpreted . . . § 1-217, which is part of the . . . act that the [commission] is charged with enforcing, to require or permit any redaction to grand lists and other records [required by statute to be complete and open to public inspection]." That ambiguous proposition ultimately lacks persuasive value because none of the cited cases actually involve § 1-217. See *Smith* v. *Kosofsky*, Freedom of Information Commission, Docket No. FIC 2009-076 (September 23, 2009) (assessor violated act by not providing motor vehicle and real property grand lists in timely manner, despite claimed technical problems); *Tatoian* v. *Assessor*, Freedom of Information Commission, Docket No. FIC 2005-258 (March 8, 2006) (Federal Drivers' Privacy Protection Act; 18 U.S.C. § 2721 et seq.; did not preclude disclosure of motor vehicle grand list information pertaining to make, model, year and assessed value of car owned by specific person); *O'Brien* v. *Zinn*, Freedom of Information Commission, Docket No. FIC 2002-048 (September 25, 2002) (real estate grand lists; matter settled); *Symmes* v. *Democratic Registrar of Voters*, Freedom of Information Commission, Docket No. FIC 2001-268 (August 22, 2001) (voter lists); *Brennan* v. *Tax Assessor*, Freedom of Information Commission, Docket No. FIC 1999-483 (April 26, 2000) (disclosure of motor vehicle grand list not barred by Federal Drivers' Privacy Protection Act or General Statutes §§ 14-10 and 14-50a).

Similarly, the cited agency decisions that do apply § 1-217 do not involve grand lists or their component data. See *Simmons* v. *East Haven Police Dept.*, Freedom of Information Commission, Docket No. FIC 2009-032 (December 2, 2009) (police department properly redacted, inter alia, officer's residential address in response to records request filed by inmate); *Weinstein* v. *Commissioner of Public Safety*, Freedom of Information Commission, Docket No. FIC 2006-374 (July 11, 2007) (commissioner of public safety properly redacted from investigation report residential addresses of city police officers); *Frank* v. *Personnel & Labor Relations Director*, Freedom of Information Commission, Docket No. FIC 2004-074 (January 12, 2005) (city properly provided names, but not addresses, of retired city police officers found ineligible to use city health insurance); *Brey* v. *Chief Information Officer*, Freedom of Information Commission, Docket No. FIC 2001-117 (February 13, 2002) (commissioner of correction properly could redact telephone numbers and list of certain municipalities that were telephoned, from requested telephone records if that specific information would pose "safety risk" by "indirectly lead[ing] to identification of the addresses of department of corrections employees").

Thus, given that none of these cases are directly on point, we need not engage in the temporal analysis to determine whether the commission's construction of § 1-217 constitutes a time-tested interpretation entitled to deference. See, e.g., *Board of Selectmen* v. *Freedom of Information Commis-*

statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 720–21.

Resolution of the issue in the present case requires an examination of three related statutes. Section 12-55 (a) provides in relevant part: "On or before the thirty-first day of January of each year, except as otherwise

---

*sion,* 294 Conn. 438, 448–49, 984 A.2d 748 (2010). Moreover, because the trial court decision cited by the commission; see *Tompkins* v. *Freedom of Information Commission,* Superior Court, judicial district of New Britain, Docket No. CV 08-4018826-S (July 13, 2009) (disciplinary records of police officer); involves § 1-217, but not grand lists or their component data, we also "need not decide whether a trial court's review of an agency's interpretation would constitute judicial scrutiny sufficient to trigger deference to the agency's subsequent application of that interpretation." *Board of Selectmen* v. *Freedom of Information Commission,* supra, 449 n.7.

specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each such grand list shall contain the assessed values of all property in the town . . . . The assessor or board of assessors shall lodge the grand list for public inspection, in the office of the assessor on or before said thirty-first day of January, or on or before the day otherwise specifically provided by law for the completion of such grand list. . . ." Section 1-217 (a) provides in relevant part: "No public agency may disclose, under the Freedom of Information Act, the residential address" of the public officials and employees designated therein. Section 1-210 (a) provides in relevant part: "*Except as otherwise provided by any federal law or state statute,* all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to . . . (1) inspect such records . . . ." (Emphasis added.)

Reading these statutes together, as we are required to do by § 1-2z, we conclude that there is no ambiguity regarding a town assessor's obligation not to disclose the home addresses of the designated public officials and employees when making a grand list and its component data available for public inspection, despite the lack of an explicit exception in § 12-55, because § 1-217 (a) prohibits the disclosure of such information and § 1-210 (a) expressly supports this prohibition by permitting exceptions to disclosure when specifically authorized by any federal law or state statute. As recently noted by this court in validating exceptions to the disclosure provision of the act in another context, "[t]he exemptions contained in [various state statutes] reflect a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality. . . . [I]t is this balance of the governmental and private needs for confidentiality with the public right to know

that must govern the interpretation and application of the [act]." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, supra, 298 Conn. 726. Accordingly, the trial court improperly determined that grand lists and their component data are not subject to redaction under the statutory scheme and improperly dismissed the plaintiffs' administrative appeals.

We disagree with the concurrence that the statutory scheme is subject to more than one reasonable interpretation and is sufficiently ambiguous to justify resort to extratextual sources, including the legislative history of § 1-217 (a). Although the concurrence concludes, and we agree, that "the text of § 1-217 (a) applies only to requests under the act," the concurrence nonetheless finds that the statute is ambiguous and examines the legislative history because the statute "does not impose a blanket of confidentiality over protected individuals' addresses for *all* purposes, and nothing in the text of § 12-55 (a) expressly provides for any exceptions with respect to the publication of the grand list or authorizes any redactions from the final published list." (Emphasis added.) Whether the statute imposes "a blanket of confidentiality over protected individuals' addresses" in any other context, however, is irrelevant. The question presented in this appeal is whether the commission properly ordered the disclosure of information "in response to a citizen's freedom of information request" under § 1-217 (a). Thus, under the concurrence's own reasoning, § 1-217 (a) clearly applies to the request *in this case* because, as the concurrence concedes, "the text of § 1-217 (a) applies . . . to requests under the act . . . ."[16]

---

[16] The concurrence justifies its finding of ambiguity, despite expressly acknowledging that "the text of § 1-217 (a) applies . . . to requests under the act," on the ground that § 12-55 (a) can be read as providing "what is in essence an exception to the exception found in § 1-217 (a)." See footnote 7 of the concurring opinion. This cannot be the case for at least two reasons. First, the act does not provide for exceptions to exceptions. Second, § 12-55 (a) was enacted in 1949, forty-six years *before* the enactment of §1-217

To the extent the concurrence joins the trial court in relying, "[p]urely by way of background," on *Gold* v. *McDermott*, supra, 32 Conn. Sup. 583, and *Davis* v. *Freedom of Information Commission*, supra, 47 Conn. Sup. 309, for the proposition that records collected in connection with the preparation of the grand list generally are subject to disclosure under § 12-55, its discussion of those cases is an unnecessary distraction in light of its acknowledgment that the analysis in *Davis*, like that in *Gold*, "begs the legal question presented in this appeal . . . [because §] 1-217 is not mentioned anywhere in either decision, likely because it did not become applicable to local governments until after October 1, 1999 [twenty-four years after *Gold* was decided] . . . and there was no mention in either case of providing the requested documents subject to any kind of redaction." (Citation omitted.) We thus do not understand how a discussion of *Gold* and *Davis* is germane to the analysis in the present case.

The judgments are reversed and the cases are remanded with direction to sustain the appeals.

In this opinion ROGERS, C. J., and PALMER and McLACHLAN, Js., concurred.

NORCOTT, J., with whom EVELEIGH, J., joins, concurring. Like the majority, Justice Eveleigh and I conclude that General Statutes § 1-217 (a),[1] which prohibits

---

(a) in 1995. Thus, § 12-55 could not have been enacted as an exception to a provision that was not yet in existence and, to the extent the concurrence relies on this reading of § 12-55 to find the statutory scheme ambiguous and to justify an examination of the legislative history of the relevant statutes and other extratextual sources, it is unconvincing.

[1] General Statutes § 1-217 provides: "(a) No public agency may disclose, under the Freedom of Information Act, the residential address of any of the following persons:

"(1) A federal court judge, federal court magistrate, judge of the Superior Court, Appellate Court or Supreme Court of the state, or family support magistrate;

"(2) A sworn member of a municipal police department, a sworn member of the Division of State Police within the Department of Public Safety or a

public agencies from disclosing, pursuant to the Freedom of Information Act (act); General Statutes § 1-200 et seq.; the home addresses of various federal, state and local government officials and employees, is applicable to the grand list of motor vehicles subject to property taxation in each town, promulgated pursuant to General Statutes § 12-55,[2] and its component data

---

sworn law enforcement officer within the Department of Environmental Protection;

"(3) An employee of the Department of Correction;

"(4) An attorney-at-law who represents or has represented the state in a criminal prosecution;

"(5) An attorney-at-law who is or has been employed by the Public Defender Services Division or a social worker who is employed by the Public Defender Services Division;

"(6) An inspector employed by the Division of Criminal Justice;

"(7) A firefighter;

"(8) An employee of the Department of Children and Families;

"(9) A member or employee of the Board of Pardons and Paroles;

"(10) An employee of the judicial branch;

"(11) An employee of the Department of Mental Health and Addiction Services who provides direct care to patients; or

"(12) A member or employee of the Commission on Human Rights and Opportunities.

"(b) The business address of any person described in this section shall be subject to disclosure under section 1-210. The provisions of this section shall not apply to Department of Motor Vehicles records described in section 14-10."

[2] General Statutes § 12-55 provides in relevant part: "(a) On or before the thirty-first day of January of each year, except as otherwise specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each such grand list shall contain the assessed values of all property in the town, reflecting the statutory exemption or exemptions to which each property or property owner is entitled, and including, where applicable, any assessment penalty added in accordance with section 12-41 or 12-57a for the assessment year commencing on the October first immediately preceding. The assessor or board of assessors shall lodge the grand list for public inspection, in the office of the assessor on or before said thirty-first day of January, or on or before the day otherwise specifically provided by law for the completion of such grand list. The town's assessor or board of assessors shall take and subscribe to the oath, pursuant to section 1-25, which shall be certified by the officer administering the same and endorsed upon or attached to such grand list. For the grand list of October 1, 2000, and each grand list thereafter, each assessor or member of a board of assessors who signs the grand list shall be certified in accordance with the provisions of section 12-40a. . . ."

provided by the department of motor vehicles (department) to the town assessors pursuant to General Statutes (Rev. to 2009) § 14-163.[3] The majority and I part company en route to that conclusion with respect to our applications of the plain meaning rule; see General Statutes § 1-2z;[4] to this statutory scheme. Specifically, I conclude that the text of the statutory scheme ulti-

---

[3] General Statutes (Rev. to 2009) § 14-163 provides: "(a) The commissioner shall compile information concerning motor vehicles and snowmobiles subject to property taxation pursuant to section 12-71 using the records of the Department of Motor Vehicles and information reported by owners of motor vehicles and snowmobiles. In addition to any other information the owner of a motor vehicle or snowmobile is required to file with the commissioner by law, such owner shall provide the commissioner with the name of the town in which such owner's motor vehicle or snowmobile is to be set in the list for property tax purposes, pursuant to section 12-71. On or before December 1, 2004, and annually thereafter, the commissioner shall furnish to each assessor in this state a list identifying motor vehicles and snowmobiles that are subject to property taxation in each such assessor's town. Said list shall include the names and addresses of the owners of such motor vehicles and snowmobiles, together with the vehicle identification numbers for all such vehicles for which such numbers are available.

"(b) On or before October 1, 2004, and annually thereafter, the commissioner shall furnish to each assessor in this state a list identifying motor vehicles and snowmobiles in each such assessor's town that were registered subsequent to the first day of October of the assessment year immediately preceding, but prior to the first day of August in such assessment year, and that are subject to property taxation on a supplemental list pursuant to section 12-71b. In addition to the information for each such vehicle and snowmobile specified under subsection (a) of this section that is available to the commissioner, the list provided under this subsection shall include a code related to the date of registration of each such vehicle or snowmobile."

I note that in Public Acts 2010, No. 10-110, § 22 (P.A. 10-110), the legislature amended § 14-163 by, inter alia, adding a new subsection (c) that provides: "No assessor or tax collector shall disclose any information contained in any list provided by the commissioner pursuant to subsections (a) and (b) of this section if the commissioner is not required to provide such information or if such information is protected from disclosure under state or federal law." See also P.A. 10-110, § 22 (a) and (b) (changing word "furnish" to "provide" in § 14-163 [a] and [b]).

[4] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

mately is subject to more than one reasonable reading and is therefore sufficiently ambiguous to justify resort to extratextual sources, specifically, the legislative history of § 1-217 (a). A review of the legislative history readily confirms, however, what seems initially apparent from the somewhat ambiguous text of the statutory scheme, namely, that § 1-217 (a) applies to motor vehicle grand lists and their component data. Accordingly, I join the court in reversing the judgments of the trial court dismissing the administrative appeals filed by the various state and local plaintiffs,[5] from the decision of the named defendant, the freedom of information commission (commission), ordering Darryl DelGrosso, the assessor of the town of North Stonington (town), to provide to the complainant, Peter Sachs, an exact electronic copy of the file that the motor vehicles department had provided to the town pursuant to § 14-163.

I begin by adopting the statement of facts and procedural history, the recitation of the parties' arguments, and the standard of review set forth in the majority opinion. I also assume that substantial evidence supports the commission's finding that the electronic file is in essence the motor vehicle grand list promulgated pursuant to § 12-55 (a). Finally, I note that in applying the plain meaning rule, codified as § 1-2z; see footnote 4 of this concurring opinion; a statute is ambiguous, thus permitting consideration of extratextual evidence of its meaning, if "when read in context, [it] is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 720, 6 A.3d 763 (2010).

---

[5] The plaintiffs are the commissioner of public safety, the commissioner of children and families, the commissioner of correction (state agencies), the judicial branch, Nicholas Mullane II and Darryl DelGrosso, as first selectman and assessor respectively of the town of North Stonington (town), and AFSCME, Council 4, Locals 387, 391 and 1565 (union).

The primary provision of the act, General Statutes § 1-210 (a), provides in relevant part: *"Except as otherwise provided by any federal law or state statute,* all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records . . . . Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. . . ." (Emphasis added.) Section 1-217 (a), the provision of the act at issue in this appeal, then provides: "No public agency may disclose, under the Freedom of Information Act, the residential address of any of the following persons," and then names twelve categories of public employees and officials subject to the statute's protections, which include, for example, state and federal judges, various correction and law enforcement officers, judicial branch employees, current and former prosecutors and public defenders. See footnote 1 of this concurring opinion for the full text of § 1-217 (a). Subsection (b) of that statute then provides: "The business address of any person described in this section shall be subject to disclosure under section 1-210. The provisions of this section shall not apply to Department of Motor Vehicles records described in section 14-10."[6]

---

[6] The cross-referenced statute, General Statutes (Rev. to 2009) § 14-10, provides in relevant part: "(a) For the purposes of this section:

"(1) 'Disclose' means to engage in any practice or conduct to make available and make known, by any means of communication, personal information or highly restricted personal information contained in a motor vehicle record pertaining to an individual to any other individual, organization or entity;

"(2) 'Motor vehicle record' means any record that pertains to an operator's license, learner's permit, identity card, registration, certificate of title or any other document issued by the Department of Motor Vehicles;

"(3) 'Personal information' means information that identifies an individual and includes an individual's photograph or computerized image, Social Security number, operator's license number, name, address other than the zip code, telephone number, or medical or disability information, but does not include information on motor vehicle accidents or violations, or information relative to the status of an operator's license, registration or insurance coverage . . . .

Standing by itself, the plain language of § 1-217 (a) seems to preclude a public agency, which would include the office of a town assessor, from disclosing pursuant to the act the residential addresses of those protected by the statute. Section 1-2z requires, however, that a statute's language be read in connection with related statutes, which, in this case involving a motor vehicle grand list, would be § 12-55 (a), which provides in rele-

"(c) (1) All records of the Department of Motor Vehicles pertaining to the application for registration, and the registration, of motor vehicles of the current or previous three years shall be maintained by the commissioner at the main office of the department. Any such records over three years old may be destroyed at the discretion of the commissioner. (2) Before disclosing personal information pertaining to an applicant or registrant from such motor vehicle records or allowing the inspection of any such record containing such personal information in the course of any transaction conducted at such main office, the commissioner shall ascertain whether such disclosure is authorized under subsection (f) of this section, and require the person or entity making the request to (A) complete an application that shall be on a form prescribed by the commissioner, and (B) provide two forms of acceptable identification. An attorney-at-law admitted to practice in this state may provide his ·or her juris number to the commissioner in lieu of the requirements of subparagraph (B) of this subdivision. The commissioner may disclose such personal information or permit the inspection of such record containing such information only if such disclosure is authorized under subsection (f) of this section. . . .

"(e) In the event (1) a federal court judge, federal court magistrate or judge of the Superior Court, Appellate Court or Supreme Court of the state, (2) a member of a municipal police department or a member of the Division of State Police within the Department of Public Safety, (3) an employee of the Department of Correction, (4) an attorney-at-law who represents or has represented the state in a criminal prosecution, (5) a member or employee of the Board of Pardons and Paroles, (6) a judicial branch employee regularly engaged in court-ordered enforcement or investigatory activities, (7) an inspector employed by the Division of Criminal Justice, (8) a federal law enforcement officer who works and resides in this state, or (9) a state referee under section 52-434, submits a written request and furnishes such individual's business address to the commissioner, such business address only shall be disclosed or available for public inspection to the extent authorized by this section.

"(f) The commissioner may disclose personal information from a motor vehicle record to:

"(1) Any federal, state or local government agency in carrying out its functions or to any individual or entity acting on behalf of any such agency . . . ."

I note that, in Public Acts 2010, No. 10-110, § 28, the legislature amended § 14-10 in relevant part by expanding the scope of subsection (e) to include "lake patrol[men] appointed pursuant to subsection (a) of section 7-151b engaged in boating law enforcement . . . ."

vant part: "On or before the thirty-first day of January
of each year, except as otherwise specifically provided
by law, the assessors or board of assessors shall publish
the grand list for their respective towns. Each such
grand list shall contain the assessed values of all prop-
erty in the town . . . . *The assessor or board of asses-
sors shall lodge the grand list for public inspection*, in
the office of the assessor on or before said thirty-first
day of January, or on or before the day otherwise specif-
ically provided by law for the completion of such grand
list. . . ." (Emphasis added.) Viewed together, then,
the text of § 1-217 (a) applies only to requests under
the act and does not impose a blanket of confidentiality
over protected individuals' addresses for all purposes,
and nothing in the text of § 12-55 (a) expressly provides
for any exceptions with respect to the publication of
the grand list or authorizes any redactions from the
final published list. Thus, § 12-55 (a) reasonably could
be read to provide an alternate avenue for the disclosure
of information otherwise protected by § 1-217 (a),
namely, inclusion on the grand list published by the
assessor pursuant to his general and unqualified publi-
cation obligations. This would suggest, then, a practical
limitation on the exception from disclosure under the
act provided by § 1-217 (a). Although this result, vigor-
ously advocated by the commission, may well seem
anomalous, in my view, it is sufficiently reasonable to
permit resort to the relevant extratextual sources under
the analysis pursuant to § 1-2z, given the long tradition
of the openness of grand lists.[7] See, e.g., *Rocky Hill*

---

[7] As the majority notes, I understand the commission's argument to be
that, when § 1-217 (a) is read in the context of the related statutes, as is
required by § 1-2z, § 12-55 (a) and its related case law provide what is in
essence an exception to the exception found in § 1-217 (a). The majority
then posits that § 12-55 (a) was enacted in 1949, forty-six years before the
enactment of § 1-217 (a) in 1995, and thus "§ 12-55 could not have been
enacted as an exception to a provision that was not yet in existence and,
to the extent the concurrence relies on this reading of § 12-55 to find the
statutory scheme ambiguous and to justify an examination of the legislative
history . . . it is unconvincing." See footnote 16 of the majority opinion. I

*Inc. District* v. *Hartford Rayon Corp.*, 122 Conn. 392, 403, 190 A. 264 (1937); *Davis* v. *Freedom of Information Commission*, 47 Conn. Sup. 309, 310, 790 A.2d 1188 (2001), aff'd, 259 Conn. 45, 787 A.2d 530 (2002) (per curiam).

Purely by way of background, I begin, however, with the case law relied upon by the trial court and the commission. In *Gold* v. *McDermott*, 32 Conn. Sup. 583, 587–88, 347 A.2d 643 (App. Sess. 1975), the Appellate Session of the Superior Court extended the openness of the grand list itself to its component parts, concluding that "documents and materials . . . which contain raw valuation data and assessment data compiled by the city of Hartford and a private firm under a contract for revaluation of taxable properties in the city for purposes of real estate taxation, [fell] within the definition" of "public records" subject to disclosure under an earlier version of the act, despite the fact that such documents had never actually been used to create the grand list. In so concluding, the court rejected the city of Hartford's claim that "§ 12-55 regulates inspection of assessment records, limits such inspection to completed grand lists only, and falls within the exception clause of [General Statutes] § 1-19 [now § 1-210]," noting that § 12-55 "merely imposes an affirmative duty on the assessor to make completed grand lists available for public inspection. Section 12-55 neither refers to the making or inspection of assessment records nor expressly limits public inspection to grand lists only." Id., 590. Significantly, however, the court emphasized that "[c]oncluding that a document is a public record within the meaning of § 1-19 . . . does *not* give rise to an automatic right of inspection. If the document falls within

---

simply observe that the majority's observation with respect to the statutes' effective date, while salient, ironically requires consideration of a factor that is historical in nature and not contained in the operative statutory text—namely, the statutes' respective dates of enactment.

one of the exceptions or exclusions found in [the act], then inspection will be precluded." (Emphasis added.) Id., 589.

The emphasis in *Gold* on potential exemptions from disclosure under the act, even in the context of grand lists and their component data, brings me to *Davis* v. *Freedom of Information Commission,* supra, 47 Conn. Sup. 309. According to the trial court's decision in *Davis,* which this court adopted as the proper statement of the law; see *Davis* v. *Freedom of Information Commission,* supra, 259 Conn. 55–56; on March 2, 1999, an insurance company investigator had requested the "motor vehicle grand list books for 1997 and 1998. The tax assessor's office denied [the investigator's] request on the grounds that the tax assessor is prohibited from disclosing motor vehicle information contained in such lists pursuant to the federal Drivers Privacy Protection Act, 18 U.S.C. § 2721 et seq. ([federal] act) and General Statutes § 14-10, as amended by No. 97-266 of the 1997 Public Acts (P.A. 97-266)." *Davis* v. *Freedom of Information Commission,* supra, 47 Conn. Sup. 310–11. The court concluded that the commission properly had ordered the assessor to provide access to inspect the tax books because the prohibitions against disclosure contained in the federal act and General Statutes §§ 14-10 and 14-50a (d) by their "express terms" applied only to state motor vehicle departments and, therefore, did not preclude assessors from disclosing "personal information," such as an individual's name and address, in the motor vehicle grand list.[8] Id., 315–16. Thus, the court determined that, under § 14-163, which requires the department to provide the relevant names, addresses

[8] The court further noted that both § 14-10 and the federal act expressly permitted the department and its employees or contractors to disclose personal information to federal, state or local governmental agencies for the purpose of carrying out their governmental functions, which extended to "the functions of the tax assessor's office." *Davis* v. *Freedom of Information Commission,* supra, 47 Conn. Sup. 316.

and vehicular information, and § 12-55 (a), which requires assessors to lodge the grand list for public inspection, the assessor could not refuse to disclose that information.[9] Id., 317–18.

Although *Davis* is factually on point, it, like the discussion in *Gold* of the various exemptions from disclosure under the act then in effect, begs the legal question presented in this appeal. Section 1-217 is not mentioned anywhere in either decision, likely because it did not become applicable to local governments until after October 1, 1999; see Public Acts 1999, No. 99-156, § 3 (P.A. 99-156); and there was no mention in either case of providing the requested documents subject to any kind of redaction. Thus, I now turn to a discussion of the history and genealogy of § 1-217, which the legislature enacted to protect the safety of certain public officials and employees by shielding their home addresses from disclosure under the act to potentially dangerous individuals.

The legislature first enacted § 1-217 in 1995 as Public Acts 1995, No. 95-163,[10] originally codified at General

[9] The court further rejected the assessor's contention that the "phrases 'except as otherwise specially provided by law' in § 12-55 (a) and 'except as otherwise provided by any federal law or state statute' in § 1-210 refer to the prohibitions against disclosure under the [federal] act and § 14-10 as amended. Since, as discussed previously, neither the [federal] act nor § 14-10 expressly prohibits disclosure by the tax assessor, her contention must fail. To conclude otherwise would require finding an implicit repeal of § 12-55 (a) and Connecticut's historical system of making grand lists, including personal property grand lists, available to the public for correction and disputation." *Davis* v. *Freedom of Information Commission,* supra, 47 Conn. Sup. 318.

[10] Public Act 95-163 provides: "AN ACT EXEMPTING THE NAMES AND ADDRESSES OF HAZARDOUS DUTY STATE EMPLOYEES FROM THE FREEDOM OF INFORMATION ACT.

"(NEW) No state department, agency, board, council, commission or institution may disclose, under the freedom of information act, the residential address of (1) a federal court judge, federal court magistrate, judge of the superior court, appellate court or supreme court of the state, or family support magistrate, (2) a sworn member of a municipal police department or a sworn member of the division of state police within the department

Statutes § 1-20f, to prohibit state agencies from disclosing, pursuant to the act, the home addresses of federal court judges and magistrates, state court judges, family support magistrates, state and municipal police officers, department of correction employees, and past or present prosecutors and public defenders, "to the extent that they so request." 38 S. Proc., Pt. 11, 1995 Sess., pp. 3736–37, remarks of Senator Winthrop Smith, Jr. The hearing testimony before the joint standing committee on government administration and elections indicates that the legislature enacted § 1-217 to address[11] the security risk first realized when the department of correction had to comply with a prison inmate's request, filed pursuant to the act, for the names of every correction officer in the state, some of which could then be cross-referenced with the gun permit owners' database to yield the officers' home addresses. See Conn. Joint Standing Committee Hearings, Government Administration and Elections, Pt. 2, 1995 Sess., pp. 419–21, remarks of Michael Ferrucci, executive assistant to the director of the correction officers union; see also id., pp. 673–75, remarks of Dennis O'Connor, lobbyist for the correction officers union (noting lack of prohibition of disclosure of addresses, and discussing possibility that gang members could review land, tax and voting

of public safety, (3) an employee of the department of correction, (4) an attorney-at-law who represents or has represented the state in a criminal prosecution, or (5) an attorney-at-law who is or has been employed by the public defender services division, if such person submits a written request for such nondisclosure and furnishes his business address to the executive head of such department, agency, board, council, commission or institution. The business address of any person described in this section shall be subject to disclosure under section 1-19 [now § 1-210] of the general statutes. The provisions of this section shall not apply to motor vehicle department records described in section 14-10 of the general statutes."

[11] It is well settled that "testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 314, 819 A.2d 260 (2003).

records to ascertain residential addresses of correction and police officers).

The legislature made two changes to § 1-217 relevant to this appeal in 1999.[12] In Public Acts 1999, No. 99-77, § 1, the legislature expanded the scope of the statute to include parole board members and employees and, more significantly, eliminated the requirement that the protected employee or official make a written request for nondisclosure and furnish their business address instead, thereby making such protection "[automatic] . . . ." 42 S. Proc., Pt. 5, 1999 Sess., p. 1516, remarks of Senator Donald Williams, Jr.; see id. ("what the amendment would do would get rid of that requirement so that they would automatically be protected without the necessity of filing such a written request"); 42 H.R. Proc., Pt. 6, 1999 Sess., p. 2090, remarks of Representative Michael P. Lawlor ("as an automatic procedure the business address as opposed to their residential address would be provided for the covered state employees").

The second significant amendment to the statute in 1999 came with P.A. 99-156, § 3, which substituted the term "public agency" for the previous language that had rendered the statute applicable only to a "state department, agency, board, council, commission or institution . . . ." Public Act 95-163. The legislature enacted P.A. 99-156 as a comprehensive response to the potential threat posed to correction employees and facilities caused when inmates or their associates obtained otherwise protected information by filing requests under the act with municipal, rather than state, agencies; it required, inter alia, notification to the com-

---

[12] Between 1995 and 1999, the legislature amended § 1-217 several times to expand its applicability to other classes of government employees. See Public Acts 1999, No. 99-26, § 27 (employees of department of children and families); Public Acts 1997, No. 97-219, § 2 (firefighters); Public Acts 1996, No. 96-83, § 1 (inspectors from division of criminal justice).

missioner of correction of requests filed by inmates.[13]
See 42 S. Proc., Pt. 8, 1999 Sess., pp. 2782–84, remarks
of Senator John Kissel (discussing growing "abuse" of
freedom of information process by inmates, including
requests to town clerks for correction officers'
addresses); Conn. Joint Standing Committee Hearings,
Government Administration and Elections, Pt. 4, 1999
Sess., p. 1001, exchange between John Armstrong, com-
missioner of correction, and Representative Alex
Knopp (observing that local zoning commission receiv-
ing request for map or engineering plan would notify
commissioner of correction, who would then determine
whether compliance fell "within the area of being a
threat to safety and security"); id., p. 1003, remarks of
Senator Kissel ("the topographic map of the maximum
security facility in Somers . . . certainly shouldn't be
in the hot hands of convicted felons"). Particularly given
the expansion in 1999 of the applicability of § 1-217
beyond state agencies to municipalities, and committee
testimony that would apply it to land and tax records,
the legislative history supports a conclusion that the
legislature intended § 1-217 to protect the residential
addresses of a broad group of public officials and
employees, and did not envision excepting entire

---

[13] For example, P.A. 99-156, § 1, amended § 1-210 by adding subsection
(c) to that statute, which requires public agencies receiving a request "from
any person confined in a correctional institution or facility, for disclosure
of any public record under the [act]," to "promptly notify the Commissioner
of Correction of such request . . . before complying with the request as
required by the [act]." Public Act 99-156, § 1, then permitted the commis-
sioner of correction, subject to appeal to the commission, to "withhold such
record from such person," if "the commissioner [of correction] believes the
requested record is exempt from disclosure pursuant to" § 1-210 (b) (18),
which provides a nonexhaustive list of exempt records, the disclosure of
which reasonably "may result in a safety risk, including the risk of harm to
any person or the risk of an escape from, or a disorder in, a correctional
institution . . . ." Subsection (c) of § 1-210 subsequently was amended to
apply similarly to a Whiting Forensic Division facility of the Connecticut
Valley Hospital, under the supervision of the commissioner of mental health
and addiction services. See Public Acts, Spec. Sess., June, 2000, No. 00-1, § 20.

classes of governmental records, including grand lists, from its reach.[14]

The commission argues, however, that this construction of § 1-217 is unworkable and inconsistent with the legislature's intent, and relies upon Public Acts 2005, No. 05-278 (P.A. 05-278),[15] which was approved by the

[14] I also note that amendments to § 1-217 subsequent to 1999 have made clear the legislature's intent to extend its protection to a broad swath of government officials or employees whose duties place them at potential risk from the actions of disturbed or disgruntled persons, including, for example, employees of the judicial branch and the commission on human rights and opportunities. See Public Acts 2008, No. 08-186, § 1 ("sworn law enforcement officer[s] within the [d]epartment of [e]nvironmental [p]rotection"); Public Acts 2008, No. 08-120, § 1 (employees of "the [d]epartment of [m]ental [h]ealth and [a]ddiction [s]ervices who [provide] direct care to patients"); Public Acts 2005, No. 05-108, § 2 (members and employees of board of pardons and paroles); Public Acts 2002, No. 02-53, § 1 (employees and members of commission on human rights and opportunities); Public Acts 2001, No. 01-186, § 17 (judicial branch employees and public defender division social workers). Indeed, the sheer breadth of the statute has been discussed during debate prior to the approval of these amendments, demonstrating the legislature's desire to err on the side of caution with respect to the nondisclosure of residential addresses. See 45 H.R. Proc., Pt. 10, 2002 Sess., p. 3099, remarks of Representative Philip Prelli (criticizing bill extending statute to all employees of commission on human rights and opportunities as "going a little too far across the board"); 44 H.R. Proc., Pt. 20, 2001 Sess., p. 6639, remarks of Representative Michael Lawlor (noting that § 1-217 precludes only disclosure of home addresses and that, "history has shown, unfortunately, that oftentimes defendants and offenders in the criminal justice system have a penchant for filing civil actions against everybody, harassing people under a variety of circumstances").

[15] Public Act 05-278 provides in relevant part: "Section 1. Section 1-217 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

"(a) No public agency [may] shall disclose, under the Freedom of Information Act, the residential address of any of [the following persons:] its officials or employees, notwithstanding that such address is listed on a public record of another agency. The provisions of this subsection do not exempt from disclosure the residential addresses of elected officials or residential addresses listed on a grand list, tax delinquency list, elector registration or enrollment form, voting list or any record that is otherwise required by law to be disclosed to the public.

"[(1) A federal court judge, federal court magistrate, judge of the Superior Court, Appellate Court or Supreme Court of the state, or family support magistrate;

"(2) A sworn member of a municipal police department, a sworn member of the Division of State Police within the Department of Public Safety;

legislature, but vetoed by the governor, and would have, inter alia, restricted the application of § 1-217 only to the public agency to which an official or employee belongs, and provided that it does not "exempt from disclosure the residential addresses of elected officials or residential addresses listed on a grand list, tax delinquency list, elector registration or enrollment form, voting list or any record that is otherwise required by law to be disclosed to the public." P.A. 05-278, § 1. The commission, citing the governor's veto statement, contends that P.A. 05-278 demonstrates the legislature's desire to narrow the application of § 1-217, especially given that it was vetoed only because of a separate provision that would have excluded legislators' e-mails from the disclosure requirements of the act. See Message of Governor M. Jodi Rell Accompanying Veto of House Bill No. 6774 (July 11, 2005) (criticizing e-mail provision because it was adopted late on final night of legislative session, "without significant debate or discussion" or public hearing, and not discussing remainder of act). As noted by the plaintiffs, however,

"(3) An employee of the Department of Correction;

"(4) An attorney-at-law who represents or has represented the state in a criminal prosecution;

"(5) An attorney-at-law who is or has been employed by the Public Defender Services Division or a social worker who is employed by the Public Defender Services Division;

"(6) An inspector employed by the Division of Criminal Justice;

"(7) A firefighter;

"(8) An employee of the Department of Children and Families;

"(9) A member of the Board of Pardons and Paroles;

"(10) An employee of the judicial branch; or

"(11) A member or employee of the Commission on Human Rights and Opportunities.]

"(b) No public agency shall disclose, under the Freedom of Information Act, the residential address of any federal court judge, federal court magistrate, judge of the Superior Court, Appellate Court or Supreme Court of the state, or family support magistrate.

"[(b)] (c) The business address of any person described in this section shall be subject to disclosure under section 1-210. The provisions of this section shall not apply to Department of Motor Vehicles records described in section 14-10."

the commission's reliance on the history of P.A. 05-278 is belied by the multiplicity of more recent unsuccessful attempts to amend § 1-217 in a similar manner, supported by the commission, which did not progress beyond committee. See Raised Bill No. 5528, 2008 Sess., § 4 (died in judiciary committee); Raised Bill No. 5583, 2006 Sess., § 1 (died in government administration and elections committee). "Ordinarily, we are reluctant to draw inferences regarding legislative intent from the failure of a legislative committee to report a bill to the floor, because in most cases the reasons for that lack of action remain unexpressed and thus obscured in the [midst] of committee inactivity."[16] (Internal quotation marks omitted.) *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 706, 724 A.2d 1093 (1999). Multiple attempts to amend a statute to achieve a particular result may, however, support an inference that the existing statute is inconsistent with that result, especially when that inference finds support in the legisla-

---

[16] The commission contends that Raised Bill No. 5528 evinced the legislature's understanding in 2008 of the "havoc wreaked by the [plaintiffs'] practice of suppressing residential addresses . . . ." Citing an exchange between then commissioner of correction Theresa C. Lantz and Senator Andrew McDonald, the commission contends that Senator McDonald understood the plaintiffs' construction of the existing § 1-217 to mean that a municipality could not disclose a protected person's name and address in a summons used to commence a tax foreclosure action. See Conn. Joint Standing Committee Hearings, Judiciary, 2008 Sess., Pt. 5, p. 1447. I decline to consider this exchange as evidence of the unworkability of § 1-217, because it is incorrect as a matter of law. Specifically, § 1-217 applies only to requests filed pursuant to the act; it, like the rest of the act, is separate and distinct from the civil litigation process. See, e.g., *Director of Health Affairs Policy Planning* v. *Freedom of Information Commission*, 293 Conn. 164, 172, 977 A.2d 148 (2009) ("the rules of discovery and the provisions of the act operate 'separately and independently' of each other"). Thus, the restriction in § 1-217 on disclosure under the act does not impinge on a public agency's rights to litigate a civil action. Cf. id., 179 ("[t]he legislature could have, but did not, similarly broaden the scope of the peer review privilege by expanding its applicability beyond the context of civil actions, either by providing a blanket protection of general confidentiality, or by expressly incorporating the privilege into the act").

tive history of the failed bills. See *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 79–81, 793 A.2d 1048 (2002) (discussing multiplicity of unsuccessful so-called "*Illinois Brick* [*Co.*] repealer bills" that would have nullified at state level United States Supreme Court holding; *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 [1977]; in concluding that, as under federal laws that guide their interpretation, state antitrust statutes do not permit indirect purchasers to bring actions under state antitrust act).

I further disagree with the commission's contention that holding § 1-217 applicable to grand lists and their component data impermissibly works an implied repeal of § 12-55 (a). "The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." (Internal quotation marks omitted.) *Nunno* v. *Wixner*, 257 Conn. 671, 682, 778 A.2d 145 (2001). "[I]t is a well established rule of statutory construction that repeal of the provisions of a statute by implication is not favored and will not be presumed where the old and the new statutes, in this case [§§ 1-217 and 12-55 (a)], can peacefully coexist. . . . If, by any fair interpretation, we can find a reasonable field of operation for both [§§ 1-217 and 12-55 (a)], without destroying or perverting their meaning and intent, it is our duty to reconcile them and give them concurrent effect." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 242, 756 A.2d 1264 (2000). "It is well established that, because we presume that the legislature does not intend to draft meaningless provisions, we are bound to harmonize otherwise conflicting statutes to the maximum extent possible without thwarting their intended purpose."[17] *State* v. *Tabone*, 292 Conn. 417, 434, 973 A.2d 74 (2009).

---

[17] As a corollary, the commission argues that, "had the legislature intended to conceal the residential addresses contained in grand lists and similar records that have long been required by statute to be open for public inspec-

Even assuming, without deciding, that there is some conflict between § 12-55 (a) and § 1-217, that conflict is easily reconcilable. Although "tax assessments are matters of public record" under § 12-55 (a); *Cherniske* v. *Jajer*, 171 Conn. 372, 377, 370 A.2d 981 (1976); the

tion, it would have done so explicitly." Given that the act "makes disclosure of public records the statutory norm"; (internal quotation marks omitted) *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, 274 Conn. 179, 187, 874 A.2d 785 (2005); I understand the commission to argue, then, that if the legislature declares specifically in a statute that a record is "public," it has done so to make those records, for lack of a better term, "super-public" and therefore not subject to *any* exception. The commission does not, however, cite any statutory provision or legislative history that actually evinces this intent. This likely is because this claim is inconsistent with one of the principal purposes of the act, namely, achieving uniformity in the treatment of public records, including setting forth the circumstances under which a public official could deny persons access thereto. Specifically, I note that the drafter of the bill enacted as the "mainstay provision of" the act in Public Acts 1957, No. 428; see *Commissioner of Public Safety* v. *Freedom of Information Commission*, 204 Conn. 609, 621 n.10, 529 A.2d 692 (1987); testified that it was necessary in part to promote uniformity because, beyond the more limited common-law doctrine of public inspection; see, e.g., *Gold* v. *McDermott*, supra, 32 Conn. Sup. 586–87; "Connecticut is classified as one of [fifteen] 'specific statute states' on the subject of public records. This means that the legislative policy is to specify the right of inspection of certain public records and to deny specifically such right of inspection as to certain other public records. But the trouble here is that the Connecticut legislature has forgotten to say anything about the rest of our public records. For example, do you know that there is no specific statute giving our citizens the right to inspect records of the town clerk . . . or records of town meetings . . . or even the records of the General Assembly itself." Conn. Joint Standing Committee Hearings, General Laws, Pt. 1, 1957 Sess., p. 293, remarks of Carter White, chairman of Connecticut Council on Freedom of Information; see also id., p. 298, remarks of Barnard Colby, assistant general manager of New London Day ("[e]nactment of these bills will benefit not only the citizens, but the conscientious public official who will find life easier if he can function under a law which clearly defines public meetings and records, and distinguishes between those records which are open to the public at reasonable times and places, and those which are not public records"). Indeed, accepting the commission's argument could well have far-ranging, and likely unintended, consequences with respect to the relationship between the act and records of numerous public agencies that, like grand lists, were statutorily denominated as "public" prior to the enactment of even the original act in 1957. See, e.g., General Statutes § 7-410 (files and records of municipal civil service

openness of tax records is intended to permit taxpayers to evaluate the accuracy and fairness of the values assessed to their property, thus aiding in ensuring a fair and rational local property tax scheme. See *Rocky Hill Inc. District* v. *Hartford Rayon Corp.*, supra, 122 Conn. 403. In the present case, the commission has not demonstrated either that DelGrosso has declined to provide assessment data specifically, or more globally, any reason why a person seeking to determine the fairness and accuracy of a motor vehicle assessment needs to know at which address a vehicle is garaged in a particular municipality in order to accomplish that task, and I cannot conceive of one.[18] Accordingly, I conclude that the trial court improperly concluded that § 1-217 does not apply to motor vehicle grand lists or their component data.[19]

---

boards, including tests); General Statutes § 16-17 (public utility accident investigations).

[18] I recognize that withholding the address of real property on a grand list would complicate the determination of that real property's proper valuation. Given that this case concerns only the motor vehicle portion of the grand list, I acknowledge the judicial branch's argument that § 12-55 (a) does not require the inclusion of property owners' names on the grand list, but nevertheless decline to declare in dicta the appropriate steps by which an assessor might safeguard the residential address of the home of a protected person under § 1-217, while still providing sufficient information for an accurate comparison of assessed residential values.

[19] I also disagree with the commission's argument that application of § 1-217 to grand lists or other public records not kept by an official or employee's agency is "in practice, completely unworkable." The commission relies on DelGrosso's testimony that, given the small size of the town, he generally recognizes which residents are subject to the protection of § 1-217, and redacts their addresses accordingly, but acknowledges that he might not necessarily know everyone who is covered. Although DelGrosso's particular approach might well be difficult to implement in larger municipalities, § 1-217 as a whole is not unworkable. Although P.A. 99-77, § 1, amended § 1-217 by eliminating the previous requirement that covered employees or officials must actively avail themselves of its protections; see text accompanying footnote 10 of this concurring opinion; I agree with the town's observation that, as a practical matter, protected persons may and should notify their towns of their status under § 1-217. See also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 2008 Sess., p. 1446, remarks of Sandra Sharr, legal counsel to department of correction (testifying that correction

Therefore, I concur in the judgment reversing the judgments of the trial court and remanding the cases to that court with direction to sustain the administrative appeals.

employees are advised to notify towns of their protected status under § 1-217). I also note the practicality of the judicial branch's suggestion that public agencies should take a more "proactive approach" to aid in the identification of protected individuals, such as by modifying government forms that request residential addresses to inquire whether the filer of the form is protected under § 1-217.